915 A.2d 85 (2007)
390 N.J. Super. 269
Ellen J. JOHNSON, Plaintiff,
v.
David L. JOHNSON, Defendant-Appellant.
Seymour Rubin, Respondent.
Superior Court of New Jersey, Appellate Division.
Argued December 20, 2006.
Decided February 5, 2007.
*86 Dale E. Console, Kingston, argued the cause for appellant.
Respondent has not filed a brief.
Before Judges CUFF, FUENTES and BAXTER.
The opinion of the court was delivered by
CUFF, P.J.A.D.
In this post-judgment matrimonial matter, we review an order that requires defendant David L. Johnson to pay seventy-five percent of an accountant's $54,440 bill. We reverse and remand for an evidentiary hearing that will include an examination of the reasonableness of the bill.
In October 1996, plaintiff Ellen J. Johnson filed a complaint for divorce. A January 14, 1997 order appointed Seymour Rubin, C.P.A., to evaluate and verify defendant's income from various business interests. Initially, the pendente lite order required defendant to pay the accountant's fee. On May 28, 1998, plaintiff and defendant executed a property settlement agreement in which defendant agreed to pay seventy-five percent of the fees due to the accountant.
On May 4, 2005, seven years after entry of the Johnsons' judgment of divorce, Rubin filed a motion to compel defendant to pay $40,830 plus interest within ten days. Rubin also sought counsel fees. In support of his motion, Rubin described his protocol for clients after receiving a court appointment. He related that he introduces himself to each party and then explains his role as a forensic accountant, "the nature of the services that will be performed," and the hourly rate for his work and that of his associates. He also describes his practice of sending the parties a bill once his services have been completed. Rubin stated that he has employed this billing practice to avoid any distractions to the parties. Thereafter, Rubin's associates conduct an interview seeking basic information. Rubin does not participate to reduce the cost to the parties.
Rubin also certified that on March 19, 1997, he interviewed plaintiff and compiled information about defendant's general background and business interests in his interview notes. During this interview, plaintiff's attorney, Irene Mecky, and Rubin's associates, Stuart L. Ruff and Cherie Jones, attended. On April 3, 1997, Rubin interviewed defendant. This time, defendant's attorney, Salvatore A. Simeone; Laurence Cutler, Simeone's partner; Stuart L. Ruff; and Cherie Jones attended.
Rubin detailed defendant's interest in various family businesses. He then requested copies of tax returns for one of the businesses for the last five years (from 1991 to 1996) and a copy of a trust document. Rubin also asked defendant about other transactions and examined the accuracy of his W-2. His interview notes detailed defendant's interests in two additional trusts, as well as defendant's additional businesses.
In his certification, Rubin related his attendance at a five-hour settlement negotiation between the parties at the courthouse with the judge. On October 24, 1997, Rubin spent an additional two hours at a conference with plaintiff and her attorney *87 regarding prior settlement negotiations. He never issued a final report to either litigant, counsel or the court. He attributes the absence to the settlement reached by the parties. He also never issued an interim bill.
Rubin certified that on October 6, 1998, approximately four months after the judgment of divorce, he addressed a statement of services to the parties' attorneys, to be forwarded to the parties. He also sent a bill explaining his and his associates' hourly rates multiplied by their total hours worked. He then attached a separate list describing general tasks performed with no mention about who performed them and the amount of time expended on any task.
Rubin further certified that on December 10, 1998, he sent another letter to the parties through their attorneys. He stated that he sent a bill on October 6, 1998, and briefly related the services rendered, including the total amount of $54,440. He also threatened suit "immediately" if full payment was not received by December 21, 1998. Defendant claims that he never received this letter.
Thereafter, Rubin sent defendant a notice dated November 30, 2003, via certified mail at defendant's office indicating that defendant owed him a past balance due of $41,000. On December 8, 2003, defendant wrote a reply letter to Rubin, acknowledging receipt of his November 30, 2003 letter. Defendant stated that he had never received a bill from Rubin in the six years after his divorce, and that he would not comply with Rubin's payment request of $41,000 until Rubin provided him with a detailed accounting.
One year later on November 30, 2004, Rubin sent a reply letter to defendant at his office address, stating that defendant still owed him money on the bill and included copies of prior correspondence regarding payment for his services. Rubin also stated that plaintiff had paid her twenty-five percent share of his bill.
Approximately two months later on February 7, 2005, Rubin's attorney sent a letter to defendant, encouraging him to make payment. On March 1, 2005, defendant responded to Rubin's attorney, expressing his unwillingness to make payment to Rubin based on his belief that Rubin's bill was "exaggerated" and the "fees and charges were extremely [exorbitant] by any standard." Moreover, defendant added that the six-year statute of limitations barred suit against him and that Rubin's payment demands were baseless.
In opposition to Rubin's motion, defendant sought to transfer the matter to the Law Division. He also submitted a certification in which he alleged that he never received a copy of Rubin's October 6, 1998 letter. Even if defendant's attorney forwarded the letter to him, defendant claims that he did not get it, possibly because he had moved out of the marital home and his mail was being sent to Mail Boxes, Etc., a commercial mail receiving agency. The U.S. Postal Service does not permit forwarding to such a mailbox. Defendant also asserted that he did not participate in the initial meeting described by Rubin during which he allegedly outlined the nature of his work and his hourly rate.
Based on a review of these conflicting certifications, the motion judge found that Rubin was credible, that the amount sought by Rubin was reasonable, and that defendant must pay the demanded amount. On appeal, defendant contends that he was entitled to a hearing on the reasonableness of the fees sought by Rubin and that the judge erred when he resolved credibility issues on contested certifications based on his prior dealings with the accountant. Defendant also urges that the judge erred in granting *88 counsel fees to Rubin and allowing compound interest. We agree and reverse and remand for an evidentiary hearing in accordance with the terms of this opinion.
The motion judge resolved a request for payment of professional fees based on conflicting certifications. Defendant challenged not only the reasonableness of the fee, but also the occurrence of certain events, including the initial meeting at which the nature, scope and cost of the services were allegedly discussed. Such a dispute cannot be resolved on conflicting certifications. See Bruno v. Gale, Wentworth & Dillon Realty, 371 N.J.Super. 69, 76-77, 852 A.2d 198 (App.Div.2004) (reversed and remanded for a plenary hearing to resolve conflicting factual contentions in certifications).
Defendant's certification was sufficient to require the hearing contemplated in Mayer v. Mayer, 180 N.J.Super. 164, 434 A.2d 614 (App.Div.), certif. denied, 88 N.J. 494, 443 A.2d 709 (1981), in which a defendant may
challenge and . . . test the various items contained in the certifications . . . filed in support of the . . . application[] for [professional] fees, and to enable him to test and to challenge the bill of . . . the expert[] by requiring [him] to detail the precise nature of all of the services rendered by him, the time spent and the rate or rates of compensation charged  including the right to introduce evidence in challenge to the reasonableness of the rates charged by [Rubin], the necessity for any part of the services performed, the time expended, etc.
[Id. at 169, 434 A.2d 614.]
More is at issue, however, than the nature, scope, necessity and reasonableness of Rubin's fees. The hearing must also include when defendant received the bill for services and his conduct on receipt of the bill, as well as whether the accountant informed defendant at the commencement of the services the scope and likely cost of his services.
Defendant requests that any hearing be conducted by another judge. We agree. Here, the motion judge resolved factual disputes against defendant without a hearing, and also expressed his belief in the credibility of the accountant. Under the circumstances, the evidentiary hearing must be conducted by another judge. See P.T. v. M.S., 325 N.J.Super. 193, 200, 738 A.2d 385 (App.Div.1999) (remanded to a different judge when a necessary plenary hearing was not conducted and the appeal concerned orders imposing sanctions for failure to comply with orders); Carmichael v. Bryan, 310 N.J.Super. 34, 49, 707 A.2d 1357 (App.Div.1998) (remanded to another judge because the motion judge expressed an opinion regarding party's intent when weighing the evidence and may be committed to his findings).
If the judge determines that defendant must pay any portion of the disputed fee, the judge may award only simple interest. Rule 4:42-11(a) prescribes that any order to pay money bears simple interest. Admittedly, the same rule allows a judge to depart from this rule; however, compound interest is clearly the exception rather than the rule. The Court has noted that compound interest is disfavored because it hastens the accumulation of debt. Henderson v. Camden County Mun. Util. Auth., 176 N.J. 554, 559, 826 A.2d 615 (2003). See also, Pressler, Current N.J. Court Rules, comment 1.1 on R. 4:42-11 (2007) ("[t]he scheme of the rule is . . . for simple interest"). We discern no basis to depart from the prevailing simple interest rule in the case.
We also disallow the counsel fee awarded to Rubin's attorney. An award of counsel fees shifts fees from one party to *89 another. It is the antithesis of the American system of litigation in which each party bears its own litigation costs. Auto Lenders Acceptance Corp. v. Gentilini Ford, Inc., 181 N.J. 245, 280-81, 854 A.2d 378 (2004). Rule 4:42-9(a) reflects this rule when it provides that "no fee for legal services shall be allowed . . . except. . . ." The rule then enumerates seven situations in which a judge may award counsel fees.
Rule 4:42-9(a)(1) provides that a fee allowance may be made in a family action. Rule 5:3-5(c) governs the award of fees in family actions. Notably, the rule limits the award of fees to "any party to the action." This does not include the professionals appointed by the court or retained by the parties. Thus, while Rubin performed professional services in the course of a family action, we do not interpret either Rule 4:42-9(a)(1) or Rule 5:3-5(c) to allow a shifting of counsel fees when the professional seeks payment of his fees. Indeed, we have held that an attorney may not obtain an allowance of counsel fees against his own client in a family action. Cohen v. Cohen, 146 N.J.Super. 330, 337, 369 A.2d 970 (App.Div.1977). Therefore, the portion of the September 23, 2005 order requiring defendant to pay Rubin's attorney's fees is reversed.
Reversed and remanded for further proceedings consistent with this opinion.