11 A.3d 407 (2011)
417 N.J. Super. 627
Moses SEGAL, Plaintiff-Appellant,
v.
Cynthia LYNCH, Defendant-Respondent.
Docket No. A-2134-09T3
Superior Court of New Jersey, Appellate Division.
Argued November 30, 2010.
Decided January 31, 2011.
*408 Steven M. Resnick, Short Hills, argued the cause for appellant (Budd Larner, P.C., attorneys; Mr. Resnick, on the brief).
Linda A. Schofel, Roseland, argued the cause for respondent Linda A. Schofel (Newman, McDonough, Schofel & Giger, P.C., attorneys; Ms. Schofel and Larry Desind, on the brief).
Respondent Cynthia Lynch has not filed a brief.
Before Judges BAXTER, KOBLITZ and NEWMAN.
The opinion of the court was delivered by
NEWMAN, J.A.D. (retired and temporarily assigned on recall).
This appeal involves the award of parenting coordinator fees to Linda A. Schofel for responding to plaintiff, Moses Segal's, grievances against her. The trial judge, not finding any material issues of fact in dispute, decided the grievances on the voluminous submissions by the parties, and found them to be without merit.
*409 Plaintiff argued that he was entitled to a plenary hearing on the twenty grievances and that the matter should not have been decided on the papers. He also asserted that fees were awarded to a pro se attorney representing herself, and such award was prohibited by law. As a matter of public policy, plaintiff maintains it was inappropriate to award fees to a parenting coordinator because it would discourage other parties from filing grievances against a parenting coordinator. Plaintiff also contends that the amount of the fees of $33,304.57 were excessive. The trial judge rejected all of plaintiff's arguments.
Plaintiff has interspersed his discussion of the propriety of an award of fees to a parenting coordinator for responding to the grievances with his dispute about the quantum of her fees for parenting coordinator services. Regarding the services issue, plaintiff asserted that a plenary hearing should have been held. The trial judge disagreed and awarded $12,128.95.
Lastly, the trial judge addressed a discovery motion and a motion for reconsideration of the discovery motion rulings. Fees were awarded pursuant to Rule 4:23-1(c) as sanctions for unjustified discovery applications.
We will treat the parenting coordinator issues relating to the grievances first, the fees awarded for the parenting coordinator's services second, and third, the fees awarded in connection with the discovery motion and the motion for its reconsideration. We are convinced that the trial judge was correct in his various rulings and fee awards and affirm.

I.
Plaintiff and defendant Cynthia Lynch had a common-law marriage under the laws of Canada. Two children, a son and a daughter, were born during their relationship. They separated in 2001. On September 22, 2006, plaintiff sued for joint custody and extended parenting time. Plaintiff asserted that defendant had alienated the children from him. On the other hand, defendant pointed out that plaintiff had abandoned the children for two years and his whereabouts were unknown. Plaintiff's departure was occasioned by his avoidance of jail because of non-payment of a support judgment. She attributed, in part, the children's attitude toward him to his extended absence.
On March 5, 2007, the Supreme Court of New Jersey approved a Pilot Parenting Coordinator program in a few counties, including Morris. A parenting coordinator's duties were to "facilitate the resolution of day-to-day parenting issues that frequently arise within the context of family life when parents are separated." The Supreme Court issued "Parenting Coordinator Pilot Program Implementation Guidelines" (Guidelines), which describe the role and authority of the parenting coordinator, a grievance process, and other details.
Shortly after this, on April 5, 2007, the trial judge appointed Linda A. Schofel (hereinafter, parenting coordinator) as parenting coordinator. On May 7, parenting coordinator presented retainer agreements to plaintiff and defendant, which were signed by both parties. The agreement provided that the parenting coordinator would bill the parties at a rate of $325 per hour, and that her fees would be divided evenly among the parties, unless parenting coordinator determined, in her discretion, that one party was abusing the process. The fees included time spent "preparing notes, recommendations, or reports for the parties, the attorneys and/or the court...."
Parenting coordinator's services were tested almost immediately when an issue *410 arose regarding the sharing of travel information between plaintiff and defendant. Soon thereafter, various issues arose throughout the summerwhether parties can copy each other on emails, scheduling parenting time around camps, math tutoring, and extended vacation time.
Not long after parenting coordinator was appointed, plaintiff called for her recusal. On May 17, 2007, parenting coordinator contacted the trial judge in order to clarify the intent of an order. Apparently, plaintiff thought this was inappropriate and asked parenting coordinator to recuse herself. On May 24, 2007, plaintiff's counsel wrote, "[since you will not recuse yourself] we will now be forced to engage in Motion practice regarding same as per the Court, which I am preparing." Parenting coordinator responded, stating that she was not sure why she would recuse herself since there was no conflict of interest and she felt that she had a good rapport with both parties and their children. Plaintiff's attorney responded with a letter that criticized parenting coordinator's work to that point and stated, "I see no further necessity for you to continue this letter writing campaign since I will be moving before the Court to address the problems noted above." Parenting coordinator responded on May 31, by informing plaintiff's attorney of the grievance procedure set out in the Guidelines. She noted that plaintiff should bring his grievances to her personally, and then, if they could not be resolved, plaintiff should write a letter to her and to defendant detailing his grievances. After that, if they could not resolve the matter, plaintiff could request a hearing from the trial judge. At that time, no further steps were taken in the grievance process.
During the next several months, plaintiff continued to express dissatisfaction with parenting coordinator. Plaintiff was upset when parenting coordinator agreed to meet with one of the children. As a result of plaintiff's objection, parenting coordinator did not meet with her. Plaintiff met parenting coordinator in her office, as per the grievance procedure, on August 27, 2007. Instead of sharing his concerns, plaintiff stated that he wanted to hear what parenting coordinator had to say. Parenting coordinator informed him that she supported his relationship with both of his children.
Plaintiff sought to meet again with parenting coordinator, but with his attorney present. Parenting coordinator responded that she was willing to meet with plaintiff alone, or with attorneys for both parties present, but that she would not meet with plaintiff and his attorney ex parte. She also stated that plaintiff's attorney was free to express his concerns to her in writing.
On November 12, 2007, plaintiff sent a letter to parenting coordinator containing twenty grievances that he had against her. Upon receipt of this letter, parenting coordinator advised plaintiff that she would respond, but that she would bill plaintiff alone for the time that it would take to do so, and that it would be "a major undertaking, at considerable cost." She also stated, "I wanted you to know my thoughts about the fee arrangement before I begin the process." Plaintiff responded that defendant should not be responsible for these fees and "if any court, any other governing body or any governing committee believes at the end of the day that I should pay you to respond to my grievance about your services, then I will pay it." On November 26, parenting coordinator responded to plaintiff and stated, "I will charge you for the time that it takes me to respond to your grievance letter."
For the next few weeks, plaintiff and parenting coordinator communicated about *411 her billing practices, but were unable to meet and have a meaningful discussion. On December 9, 2007, plaintiff submitted his grievance letter to the trial judge. On December 19, the trial judge issued an order to show cause why parenting coordinator should not continue in her role as parenting coordinator and why plaintiff should not immediately pay her bill for services rendered. Parenting coordinator submitted her response to plaintiff's grievances on January 3, 2008. Plaintiff submitted his reply on February 15, 2008.
On April 14, 2008, the trial judge found that all twenty of plaintiff's grievances were without merit and ordered plaintiff to pay parenting coordinator's fees, which included time spent preparing her response to plaintiff's grievances. The trial judge reasoned that parenting coordinator spent a significant amount of time out of her practice responding to plaintiff's grievances and that parenting coordinator "should not be penalized for plaintiff's unreasonable conduct."
Following a review of a transcript involving the parenting coordinator, plaintiff, and defendant, Judge Weisenbeck had this to say: "It is abundantly clear to the Court that [parenting coordinator] conducted herself professionally and admirably under sometimes contentious circumstances, did her best to control the anger exhibited by both parties, and acted solely in the best interests of the children."
On appeal, plaintiff raises the following issues for our consideration:
POINT I
THE TRIAL COURT ERRED AS A MATTER OF LAW IN AWARDING LINDA SCHOFEL, ESQ. PRO SE ATTORNEY'S FEES.
A. A self-represented litigant cannot incur attorney's fees.
B. The Family Court does not have jurisdiction to award litigation related attorney's fees incurred by court-appointed experts.
POINT II
EVEN IF PERMITTED BY LAW, THE TRIAL COURT'S AWARD OF PRO SE ATTORNEY'S FEES WAS AN ABUSE OF DISCRETION.
A. As to the April 14, 2008 award of pro se attorney's fees in the amount of $33,304.57.
B. As to the June 24, 2008 Order awarding Ms. Schofel pro se attorney's fees for the time and expenses spent on filing her Motion to Quash plaintiff's Subpoena and the October 28, 2008 quantifying said fees as $4,659.60.
C. As to the October 28, 2008 Order awarding Ms. Schofel $1,096 in pro se counsel fees.
D. As to the June 26, 2008 Order awarding Ms. Schofel pro se counsel fees.
POINT III
THE APRIL 14, 2008 ORDER AWARDING MS. SCHOFEL $33,304.57 IN PRO SE ATTORNEY'S FEES IS AGAINST PUBLIC POLICY.
POINT IV
THE APRIL 14, 2008 ORDER UPHOLDING THE ENTIRE PARENTING COORDINATION FEES CHARGED BY MS. SCHOFEL AND COMPELLING PLAINTIFF TO PAY HIS OUTSTANDING SHARE OF $12,128.95 WHICH WAS DECIDED "ON THE PAPERS", WITHOUT A PLENARY HEARING, WAS AN ERROR AS A MATTER OF LAW.
A. Plaintiff was entitled to a plenary hearing on Ms. Schofel's claim for parenting coordination fees under their retainer contract.

*412 B. The Summary Judgment Standard should not have been applied to Ms. Schofel's request for fees under their retainer contract.
(i) Ms. Schofel's submission to the court did not comply with the Rules of the Court regarding Motions for Summary Judgment.
(ii) The Court's decision was contrary to the Rules of the Court which mandate that all inferences drawn from the evidence should be made in favor of plaintiff.
POINT V
THE APRIL 14, 2008 ORDER UPHOLDING THE ENTIRE AMOUNT OF FEES CHARGED BY MS. SCHOFEL FOR PARENTING COORDINATION SERVICES AND COMPELLING PLAINTIFF TO PAY $12,128.95 AS HIS OUTSTANDING SHARE WAS ENTERED IN VIOLATION OF PLAINTIFF'S DUE PROCESS RIGHTS AS HE WAS DENIED A PLENARY HEARING PURSUANT TO THE PARENTING COORDINATION GUIDELINES MANDATED BY THE SUPREME COURT.
POINT VI
THE APRIL 14, 2008 ORDER UPHOLDING THE ENTIRE AMOUNT OF FEES CHARGED BY MS. SCHOFEL AND COMPELLING PLAINTIFF TO PAY $12,128.95 WAS AN ABUSE OF DISCRETION.
POINT VII
THIS ISSUE OF MS. SCHOFEL'S EXORBITANT PARENTING COORDINATOR FEES MUST BE REMANDED FOR A PLENARY HEARING BEFORE A DIFFERENT JUDGE.[1]

II.
The history leading to the adoption of a Pilot Parenting Coordinator Program stems from the recommendation from the Family Practice Committee Report of January 15, 2004. Revised recommendations were contained in the "Out of Cycle" report of the Family Practice Committee Report of January 17, 2006. In making such recommendation, the report had this to say about the expected effect on the court system:
The Practice Committee believes that the use of parenting coordinators positively affects the court process and significantly reduces the motion practice of already burdened court calendars, particularly in connection with high conflict cases. The Conference of Family Presiding Judges is in favor of the use of parenting coordinators in an attempt to facilitate non-judicial resolution of parenting implementation issues.
Anecdotally, the members of the Practice Committee are aware that appointed parenting coordinators have performed a significant service to assist parties in resolving issues of daily living, such as selection and scheduling of activities, pick-up times and locations, disputes over switching time, and other such issues. The Practice Committee believes that it is not prudent or necessary for disputes about such issues to be processed by the court in the first instance.

*413 Moreover, our judicial members believe that the use of parenting coordinators positively and significantly reduces the motion practice of already burdened Court calendars, particularly in connection with high conflict cases. The Conference of Family Presiding Judges is in favor of the use of parenting coordinators in an attempt to facilitate resolution of parenting implementation issues.
On July 28, 2006, the Supreme Court, through Acting Administrative Director Carchman, did not adopt a proposed rule at that time, but asked that a pilot program be developed and submitted for its approval. The Pilot Program was approved by the Supreme Court on March 5, 2007.
The role of the parenting coordinator is well defined by the program guidelines:
The parenting coordinator's goal is to aid parties in monitoring the existing parenting plan, reducing misunderstandings, clarifying priorities, exploring possibilities for compromise and developing methods of communication that promote collaboration in parenting. The parenting coordinator's role is to facilitate decision-making between the parties or make such recommendations, as may be appropriate when the parties are unable to do so. One primary goal of the parenting coordinator is to empower parents to develop and utilize effective parenting skills so that they can resume the parenting and decision-making role without the need for outside intervention. The parenting coordinator should provide guidance and direction to the parties with the primary focus on the best interests of the child by reducing conflict and fostering sound decisions that aid positive child development.
The authority of the parenting coordinator is set forth by way of illustration in the Guidelines. The parenting coordinator is prohibited from making any modifications to "any order, judgment, or decree, unless all parties agree and enter into a consent order." Guidelines II.C.(3). While the parenting coordinator "may recommend minor departures from a parenting plan when a situation arises that may warrant such an adjustment ..." the "parties must agree to the change or file a motion to have the recommendation reviewed by the court." Ibid.
The Guidelines also describe the qualifications to become a parenting coordinator and the application procedure. Guidelines II.D; III. It is undisputed that Ms. Schofel was qualified and on the approved roster of parenting coordinators.
The parenting coordinator is directed to hold the "initial meeting with the parties and define her role and describe for the parties in the retainer agreement, the role limitations and fees of the parenting coordinator." Guidelines IV(6). Included in the retainer agreement should be the hourly cost for services and method of payment. Guidelines IV(6)d. The parenting coordinator is also responsible for maintaining "adequate records to support fees and expenses." Guidelines IV(6)i.
The Guidelines prescribe a grievance procedure, which reads as follows:
(8) Grievance ProcedureA party having a complaint or grievance shall discuss the matter with the Parenting Coordinator in person in an attempt to resolve it before pursuing it in any other manner. If the issue remains unresolved, the parties shall submit a written letter to the Parenting Coordinator detailing the complaint or grievance, with a copy to the other party, to both attorneys (if any), and to the attorney for the child(ren) if one is in place. The Parenting Coordinator shall within thirty (30) days provide a written response to both *414 parties and the attorneys. The Parenting Coordinator at his/her discretion may schedule a meeting or conference call with the attorneys or with the attorneys and the parties in an effort to resolve the complaint. In situations where the grievance or complaint is not resolved by this process, the dissatisfied party may request a court hearing to make a determination on the issue(s).
Plaintiff asserts that the trial judge erred, as a matter of law, by awarding pro se attorney's fees to parenting coordinator. He argues that a trial judge cannot award fees to a self-represented litigant, like a parenting coordinator. Further, plaintiff argues that the Family Part does not have jurisdiction under Rule 5:3-5(b) to award fees to a third party.
The trial judge awarded parenting coordinator fees as per her parenting coordinator retainer agreement. He awarded $33,304.57 as "fees due and owing to [parenting coordinator] for time and expenses spent responding to plaintiff's grievances...."
Parenting coordinators are to be compensated "in accordance with their stated fees and for expenses incurred, which shall be clearly set forth in the retainer agreement and/or in the information materials provided to the parties at the initial conference." Guidelines IV(9). Where there is a pay dispute, the court should resolve the non-payment and "may issue a sua sponte Order to Show Cause as to why the parenting coordinator's bill should not be paid." Guidelines IV(10).
The grounds for termination of a parenting coordinator are set forth in IV(12) of the Guidelines where a party may petition the court for termination of a parenting coordinator's services "whenever the parenting coordinator has exceeded his/her mandate or has acted in a manner inconsistent with the approved procedures, or has violated professional conduct, provided the approved grievance procedure has been utilized." Against the background of these pertinent Guidelines, it is clear that the grievance procedure set forth in the Guidelines was followed. The trial judge had the authority to issue the order to show cause and did so.
In general, parties to litigation should bear their own costs and attorney's fees. R. 4:42-9. However, one of the exceptions to the general rules is that fees may be awarded by contract. See Alpert, Goldberg, Butler, Norton & Weiss, P.C. v. Quinn, 410 N.J.Super. 510, 546 n. 8, 983 A.2d 604 (App.Div.2009), certif. denied, 203 N.J. 93, 999 A.2d 462 (2010).
Here, we do not view the parenting coordinator's fees for responding to plaintiff's grievance letter as attorney's fees, but we do find a contractual basis to pay for her time devoted to responding to the grievances. Under the retainer agreement signed by plaintiff, he agreed to pay for her services in a "report" to the court. Indeed, parenting coordinator's response to the grievances served a dual purpose: (1) a defense to the charges made against her; and (2) a report to the trial judge establishing the baselessness of the grievances. As the Guidelines make clear, a judge is obliged to resolve any dispute filed by a litigant against the parenting coordinator if the coordinator and the parent are unable to resolve that conflict themselves. Without a report from the parenting coordinator in response to the grievance, the judge has no basis upon which to analyze the grievance and no way to determine if the grievance is meritorious.
We do not have to address whether fees should be awarded where a parenting coordinator is terminated by court action. Here, the parenting coordinator was clearly *415 the prevailing party. Plaintiff was put on notice that the burden of responding was going to be time consuming for parenting coordinator. Plaintiff agreed that if a court ordered payment, he would pay. We have no reluctance in affirming Judge Weisenbeck's decision that the parenting coordinator was entitled to be compensated under the retainer agreement and her success in defending against the grievances brought against her.
Plaintiff asserts that it would be against public policy to award fees to the parenting coordinator for a response to a grievance letter. He contends that it would discourage a grievant from making such complaints knowing that fees could be awarded. Aside from the fact that there was a contractual basis under the retainer agreement to award fees here, we also think that public policy was advanced by awarding fees to a parenting coordinator. Parenting coordinators perform a thankless, and, on many occasions, hopeless task of negotiating issues involving children between hostile parents. They are frequently of immense help to the court by way of keeping minor disputes out of litigation, one of the objectives of the parenting coordinator program. They are also subject to and the focus of extreme hostility by one or both of the parents. It would be crippling to the program if a parenting coordinator was not compensated for the time spent in responding to, as in this case, what amounted to baseless grievances.
Plaintiff argues that he was entitled to a hearing before the judge on parenting coordinator's claim for fees associated with the response to plaintiff's grievances. Plaintiff asserts that it was unfair for the trial judge to utilize a summary judgment analysis to his claims without giving him notice. Even if such an analysis were appropriate, it is contended parenting coordinator and the trial judge did not properly comply with procedural requirements. Plaintiff further argues that he was entitled to a hearing under the Guidelines. We disagree.
After plaintiff submitted his grievances to Judge Weisenbeck, the judge, sua sponte, issued an order to show cause why plaintiff's portion of parenting coordinator's outstanding bill should not be immediately paid by plaintiff and why parenting coordinator should not continue as the parenting coordinator. This order was filed on December 19, 2007, and parenting coordinator filed her response on January 3, 2008. Plaintiff submitted his reply on February 15, 2008. The trial judge noted that plaintiff had "ample time to thoroughly address all of [plaintiff's] alleged grievances and attach evidence, if available, that supported [plaintiff's] claim." Plaintiff requested a hearing on the matter.
Contrary to plaintiff's assertion, the Guidelines do not require that a hearing be held, only that a grievant "may request a court hearing to make a determination on the issue(s)." Guidelines IV(8). It is up to the trial judge to decide if a hearing is necessary to resolve the alleged grievances. Here, the trial judge was furnished with a very expansive responding certification and supporting exhibits addressing each of the twenty grievances. Plaintiff also filed a reply after reviewing all of parenting coordinator's submissions. The trial judge had an abundance of material on the issues before him.
The trial judge denied plaintiff's request for a hearing because he found that there was no genuine issue of material fact requiring a hearing. The trial judge noted that although this was not a motion for summary judgment, similar principles govern motions for summary judgment and requests for a hearing. In both cases as the trial judge observed, "an opponent in *416 any proceeding must specifically demonstrate the existence of material facts to support a request for a hearing." Here, the trial judge found that parenting coordinator refuted each of plaintiff's grievances with "detailed description[s] of events and supporting documentation, [while] plaintiff's reply is replete with unsupported speculation or argument." The trial judge observed that the only disputed fact raised by plaintiff is whether he made a statement to parenting coordinator regarding his "true motivation" for bringing this case. As the trial judge noted, this fact was irrelevant to plaintiff's grievances.
Plaintiff argues that the trial judge should not have decided the issue of his grievances "on the papers." Plaintiff cites two cases for the proposition that a claim for attorney's fees is an element of damages, which ordinarily cannot be proven by affidavit or certification. (Citing Cohen v. Fair Lawn Dairies, Inc. 86 N.J.Super. 206, 216, 206 A.2d 585 (App.Div.), aff'd, 44 N.J. 450, 452, 210 A.2d 73 (1965); Jennings v. Cutler, 288 N.J.Super. 553, 567, 672 A.2d 1215 (App.Div.1996)). However, this is not a claim for attorney's fees and the cited opinions are inapposite. The trial judge initiated the procedure sua sponte in response to plaintiff's grievances and also to determine the amount of fees for performing parenting coordinator services.
Plaintiff also relies on Johnson v. Johnson, 390 N.J.Super. 269, 915 A.2d 85 (App. Div.2007). There, we remanded the case to the trial judge for a hearing to resolve a dispute over unpaid fees by a court-appointed accountant. Id. at 275, 915 A.2d 85. We commented that since the party challenged the occurrence of certain events that were billed, such a dispute could not be settled by conflicting certifications. Ibid. The party claimed that he never received the expert's request for payment and that he was not at the initial meeting where the expert outlined his fee schedule. Id. at 274, 915 A.2d 85.
Johnson is readily distinguishable. Unlike Johnson, here there is no genuine issue of material fact. Plaintiff does not dispute the occurrence of specific events. Rather, he argues that the fees should not be awarded to a pro se attorney. But, as we explained, the fees were for the time expended by the parenting coordinator in (1) defending herself against grievances attacking her competency and performance in the role assigned to her by the trial judge, and (2) served as a report to the trial judge.
Plaintiff further maintains that the trial judge should not have used a summary judgment-type analysis without first giving the parties notice. However, even plaintiff recognized in his brief: "It is well settled that a court cannot decide a matter on the papers where the parties have presented a genuine issue of material fact regarding the matter." (Citing Harrington v. Harrington, 281 N.J.Super. 39, 47, 656 A.2d 456 (App.Div.1995)). Furthermore, as parenting coordinator correctly noted, a hearing is only required when there is a genuine issue of material fact and the trial judge determines that a hearing would be helpful to resolving the issue. (Citing Shaw v. Shaw, 138 N.J.Super. 436, 440, 351 A.2d 374 (App.Div.1976)); see also Hand v. Hand, 391 N.J.Super. 102, 105, 917 A.2d 269 (App.Div.2007). Since there was no genuine issue of material fact, the trial judge was well within his discretion to decide the matter on the papers.
Plaintiff claims that despite using a summary judgment type analysis, parenting coordinator did not comply with procedural requirements of a motion for summary judgment and the trial judge did not view all evidence in a light most favorable to plaintiff. Plaintiff contends that in order for the trial judge to apply a summary *417 judgment type standard, parenting coordinator should have submitted a statement of material facts and a legal brief. Since this was not actually a motion for summary judgment, but rather a response to a sua sponte court order to show cause, the procedural requirements of a summary judgment motion were inapplicable.
Plaintiff argues that the trial judge should have viewed all evidence presented in a light most favorable to him and not simply state that it saw "no merit" in plaintiff's twenty grievances. Plaintiff mischaracterizes what the trial judge did. The trial judge found no merit or that the grievances were baseless after a thorough analysis of each of the twenty grievances. Moreover, plaintiff offered no evidence disputing a single issue of material fact. Nor has plaintiff done so on this appeal. Plaintiff apparently considers an unsupported statement calling parenting coordinator a liar as sufficient evidence to warrant a hearing. The trial judge disagreed and so do we. An examination of the voluminous record does not reveal any error in Judge Weisenbeck's careful findings with regard to the lack of merit to any of plaintiff's twenty grievances.

III.
In his fifth point, plaintiff argues that the trial judge should have granted a hearing as part of the grievance process under the Guidelines for fees related to services performed as a parenting coordinator. Plaintiff contends that the Guidelines state that when a parenting coordinator and a party are unable to resolve fee disputes on their own, "the dissatisfied party may request a court hearing to make a determination on the issue(s)." The language quoted refers to the grievance procedure, not to a pay dispute.
Indeed, Guideline IV(9) addresses Compensation of Parenting Coordinators and provides:
Parenting Coordinators shall be compensated in accordance with their stated fees and for expenses incurred, which shall be clearly set forth in the Retainer Agreement and/or in the information and materials provided to the parties at the initial conference. Parties shall pay the apportioned percentage agreed upon and set forth by the court.
Under Guidelines IV(10), the procedure for resolving a pay dispute is set forth:
A Parenting Coordinator who has not been paid in a timely manner may fax a letter to the court in the county of venue detailing the lack of payment. In such situations, the court will attempt to resolve the nonpayment. The court may issue a sua sponte Order to Show Cause as to why the Parenting Coordinator's bill should not be paid.
Nowhere in the Guidelines does it call for the holding of a hearing. Rather, it is left up to the trial judge to decide how the dispute is to be resolved. Here, Judge Weisenbeck decided it was unnecessary to hold a hearing. The time spent in rendering services was well documented by parenting coordinator and complied with her "responsibility to maintain adequate records to support fees and expenses." Guidelines, IV(6)i.
Plaintiff, in his sixth point, asserts that the trial judge abused his discretion by awarding parenting coordinator all of the fees that she billed. Plaintiff contends that the trial judge "effectively `rubber stamped' [parenting coordinator's] outrageous bills." He states that the trial judge failed to address his concerns with parenting coordinator's billing. Plaintiff claims that the trial judge accepted the billing statements without assessing their reasonableness because the bills complied *418 with the retainer agreement. Plaintiff does not list any actual concerns that he has with parenting coordinator's billing in this section.
Only one of plaintiff's grievances concerned billing; that is number ten, which states, "[parenting coordinator] billed the parties for scheduling issues, leaving and receiving telephone messages, and for skewed time spent conferencing with [defendant] individually." Plaintiff details these complaints in his certification in response to the December order to show cause. Judge Weisenbeck thoroughly explored these issues and decided that they were without merit. The trial judge found that the activities complained of by plaintiff were contemplated by the retainer agreement and were within parenting coordinator's job description. Contrary to plaintiff's assertion, the trial judge properly addressed plaintiff's concern and found it to be without merit. We do not see where the trial judge abused his discretion addressing the amount of the fees charged for services performed.

IV.
In February 2008, plaintiff subpoenaed parenting coordinator, three other members of her firm, and one associate. Plaintiff wanted to depose parenting coordinator. He directed her to bring any documents relating to the matter to his lawyer's office, as well as documents proving her credentials. Likewise, he sought to depose parenting coordinator's colleagues and demanded they produce any documents in their possession concerning this matter at their deposition.
On March 12, 2008, parenting coordinator wrote a letter to plaintiff, noting that the retainer agreement stated that parenting coordinator "will not testify at deposition or at trial unless by Court Order." The letter also requested a retainer in the amount of $10,000 to cover the costs of preparing for and attending the deposition, with any remainder to be returned to plaintiff.
The same day, plaintiff's attorney responded to parenting coordinator's letter stating that her "clear gamesmanship regarding hiding from your deposition will not be tolerated by this office .... [plaintiff] will not be blackmailed by your ridiculous demand for $10,000." He disputed that the retainer agreement referenced depositions and stated that he expected her to appear. The retainer agreement referenced depositions. Plaintiff's attorney later acknowledged that the retainer referenced depositions, but argued that that provision violates the Guidelines.
Plaintiff's counsel, also on March 12, sent a letter to parenting coordinator stating that "[plaintiff] will accept from you the sum of $100,000 to settle the fees you claim he owes you as well as to settle his claim for counsel fee reimbursement from you to him." The next day, parenting coordinator responded, "[t]o the extent your settlement offer was serious, it is rejected."
On March 17, parenting coordinator wrote a letter to plaintiff's counsel again stating that she would be deposed upon receipt of a court order and stating that plaintiff's counsel could view all relevant documents at her office. Plaintiff's attorney did review documents at parenting coordinator's office on March 24, 2008.
On March 31, 2008, plaintiff requested information from parenting coordinator concerning all previous cases for which she served as parenting coordinator. Plaintiff was interested in initiating a class-action lawsuit against parenting coordinator. Upon learning of this, parenting coordinator asked the trial judge to remove her from this case.
*419 On April 1, 2008, plaintiff filed a notice of motion to compel deposition. On May 2, 2008, parenting coordinator filed a cross-motion seeking payment of her outstanding balance and agreeing to be deposed at her office or a neutral location. The trial judge granted plaintiff's motion only with respect to the limited deposition of one of parenting coordinator's associates.
Judge Weisenbeck explained his ruling in the following terms whereupon he was
satisfied that [the Newman firm] should be awarded fees, in part, for having to reply to plaintiff's Cross-Motion to Compel. Ms. Schofel's letter to the Court (and copied to plaintiff's counsel) dated April 23, 2008 (two days prior to the filing of Ms. Schofel's motion) indicates that Ms. Schofel had previously notified plaintiff's counsel that none of the other members of her firm have any documents or information relating to her service as Parenting Coordinator. Moreover, plaintiff's counsel does not deny that he had `unfettered access' to all the files in Ms. Schofel's office related to this matter on March 24, 2008. Finally, nowhere in plaintiff's cross-motion does he explain why and how discovery relating to Ms. Schofel's colleagues is relevant to his custody/parenting time case against defendant. Even if the Court assumes that Ms. Schofel consulted with other attorneys in her office about the issues between the parties in this matter and her role as parenting coordinator, as plaintiff alleges in his cross-motion, any such conversations would not assist the Court in making a custody/parenting time determination.
On October 28, 2008, the court, relying on Rule 4:23-1(c), granted parenting coordinator fees in the amount of $4,659.60 for "costs incurred in responding to plaintiff's unjustified motion to compel discovery." Plaintiff moved for reconsideration. That motion was also denied and parenting coordinator was awarded fees of $1,069.
Rule 4:23-1(c) provides, in relevant part, that if a motion to compel discovery is denied,
the court shall, after opportunity for a hearing, require the moving party to pay to the party opposing the motion the reasonable expenses incurred in opposing the motion, including attorney's fees, unless the court finds that the making of the motion was substantially justified or that other circumstances make an award of expenses unjust. If the motion is granted in part and denied in part, the court may apportion the reasonable expenses incurred in relation to the motion among the parties and persons in a just manner.
An award of attorney's fees is governed by the abuse-of-discretion standard. Pressler & Verniero, Current N.J. Court Rules, Comment 4.2 to R. 2:10-2 (2011) (citing Furst v. Einstein Moomjy, Inc., 182 N.J. 1, 25, 860 A.2d 435 (2004)). An appellate court should reverse such a decision only if it is unsupported by the facts in the record. Id. (citing Best v. C & M Door Controls, Inc., 200 N.J. 348, 360-61, 981 A.2d 1267 (2009)).
In challenging the award of fees, plaintiff contends that parenting coordinator was not completely successful, although awarded 100% of her fees; that there was no factual basis to find he acted in bad faith; that the trial judge's award of counsel fees was arbitrary and capricious; and the award was an abuse of the trial judge's discretion. We disagree.
First, 100% of fees was not awarded. The trial judge granted "$4,659.60 as opposed to the $5,159.60 requested." The trial judge subtracted for the expenses incurred in preparing Joanne Guiliano-Geiger's *420 opposition, which deposition was permitted.
With respect to the charges that there was no basis to find that plaintiff acted in bad faith, the record is clear that plaintiff's motion was substantially unjustified. While there was no express finding that plaintiff acted in bad faith, there is no requirement that such a finding be made. The trial judge was convinced that plaintiff's motion was substantially unjustified which would support the award of counsel fees. We discern nothing arbitrary nor capricious in the trial judge's award of fees. Nor was there any abuse of the trial judge's discretion in making such an award.
Plaintiff contends that there should have been no award of counsel fees for opposing plaintiff's motion for reconsideration. Once again, plaintiff asserts that the trial judge abused his discretion in relying on Rule 4:23-1(c).
Rule 4:23-1(c) permits a judge to award the prevailing party "reasonable expenses incurred in opposing the motion, including attorney's fees...." Surely, "reasonable expenses incurred in opposing the motion" should include expenses incurred in defending motions for reconsiderations and appeal. See Khoudary v. Salem County Bd. of Soc. Servs., 281 N.J.Super. 571, 576, 658 A.2d 1317 (App. Div.1995) (holding that fee shifting provision of "frivolous litigation act" applied to motion for reconsideration on appeal). This is especially so since the same ground previously addressed was covered again. The trial judge properly awarded her fees for responding to plaintiff's motion to reconsider the same issues already ruled upon.
On April 1, 2008, plaintiff again moved to compel parenting coordinator to attend a deposition and produce documents. Although the trial judge denied most of plaintiff's motion, he only granted fees relating to plaintiff's request that parenting coordinator produce "information regarding any and all matters where she served or is serving as Parenting Coordinator." The record before us does not indicate that the amount of these fees were fixed by the trial judge. Thus, the issue is not ripe for decision since the amount of the award is presently unknown.
Affirmed.
NOTES
[1] Sometime after filing the present appeal, plaintiff moved to recuse Judge Weisenbeck and/or moved to change venue and the motion was denied. When this court granted plaintiff leave to appeal the motion and stayed the trial court proceedings, Judge Weisenbeck decided that it would be in the best interests of the children to recuse himself, rather than protract this matter for several months while the appeal was pending. Thus, any issue regarding recusal has been mooted since there is no relief to be afforded. Cinque v. New Jersey Dep't of Corrections, 261 N.J.Super. 242, 243-44, 618 A.2d 868 (App.Div.1993).