48 A.3d 328

MOSES SEGAL, v. CYNTHIA LYNCH, DEFENDANT, AND LINDA A. SCHOFEL, DEFENDANT-RESPONDENT.

Argued April 25, 2012—Decided August 2, 2012.

*Steven M. Resnick* argued the cause for appellant (*Budd Larner*, attorneys; *Mr. Resnick, Christopher R. Paldino,* and *Jennifer L. Young,* on the briefs).

*Linda A. Schofel* argued the cause for respondent (*Newman, McDonough, Schofel & Giger,* attorneys; *Ms. Schofel* and *Laurence Desind,* on the brief).

*Bonnie C. Frost* argued the cause for amicus curiae New Jersey State Bar Association (*Kevin P. McCann,* President, attorney; *Susan A. Feeney,* of counsel; *Ms. Frost, Ronald G. Lieberman,* and *Andrea Beth White,* on the brief).

*Hanan M. Isaacs* submitted a brief on behalf of amicus curiae Association of Family and Conciliation Courts New Jersey Chapter (*Mr. Isaacs,* attorney; *Mr. Isaacs* and *Amy Wechsler,* on the brief).

Justice HOENS delivered the opinion of the Court.

In this appeal, we consider the nature and extent of fees that may be recovered from a litigant in a matrimonial dispute by an individual who has been appointed to serve as a parenting coordinator. More specifically, we address the circumstances under which and the basis upon which a litigant who raises a grievance against the parenting coordinator may be called upon to answer for fees incurred by the parenting coordinator in responding to a grievance; in resisting discovery demands relating to the grievance; in participating in discovery about the grievance; in pursuing enforcement of a fee award in the trial court; and in participating in the appellate process.

I.

Plaintiff Moses Segal and defendant Cynthia Lynch, who is not a party to this appeal, had a common-law marriage in Canada as a result of which they had two children together. In 2001, Segal and Lynch separated, and the Superior Court of Ontario, Canada, awarded Lynch a significant sum as court-ordered support. Thereafter, Lynch and the children moved to New Jersey. In 2006, Segal commenced litigation against Lynch in New Jersey for joint custody and extended parenting time.

Utilizing the framework of the Parenting Coordinator Pilot Program that had been approved by this Court on March 5, 2007, Judge Thomas L. Weisenbeck appointed respondent Linda A. Schofel to serve as a parenting coordinator in the parties' custody dispute. The court's order, dated April 5, 2007, which followed the form that was included in the pilot program's Implementation Guidelines, set forth a variety of provisions governing the parties and the parenting coordinator.

The order, in particular, included sections concerning the mechanism by which grievances against the parenting coordinator could be raised and resolved. In paragraph thirteen, it provided:

A person having a complaint or grievance shall discuss the matter with the Parenting Coordinator in person in an attempt to resolve it before pursuing it in any other manner. If the issue remains unresolved, the aggrieved party shall submit a written letter detailing the complaint or grievance to the Parenting Coordinator with a copy to the other party, both attorneys (if any), and to the attorney for the child(ren) if one is in place. The Parenting Coordinator shall within thirty (30) days provide a written response to both parties and the attorneys. The Parenting Coordinator at his/her discretion may schedule a meeting or conference call with the attorneys or with the attorneys and the parties in an effort to resolve the complaint. In situations where the grievance or complaint is not resolved by this process a hearing may be requested of the court by the dissatisfied party to address the issues that have been raised and make a final determination.

Other provisions governing the parties and the parenting coordinator, including the requirement that the parenting coordinator use a retainer agreement to set forth fees and expenses, the manner in which disputes about payment of the parenting coordi-

nator's fees are to be addressed, and additional details governing the grievance procedure, are found in the Guidelines.

Schofel has a master's degree in social work and is also an attorney licensed to practice in New Jersey. In accordance with the requirements of the Guidelines, she presented her proposed retainer agreement to Segal and Lynch. That agreement included, among other things, Schofel's description of her role and an explanation of her fees. It provided, in relevant part:

*Written and Oral Reports and Appearance in Court:*

At the completion of the meetings, the Parenting Coordinator may submit written reports to the parties and their attorneys describing any conflicts and the Parenting Coordinator's recommended resolutions. The Parenting Coordinator may also report to the Court, the parties and their attorneys as to the parental compliance with and parental attitudes about any element of the Parenting Plan as amended by agreement or recommended by the Parenting Coordinator. Copies of all reports to the Court shall also be sent to the parties and their attorneys.

If either party wants the Parenting Coordinator to testify on any matter, he or she must file a motion and show good cause in the motion. The Parenting Coordinator should be provided with a copy of the motion. The Parenting Coordinator will not testify at deposition or at trial unless by Court Order. If a subpoena is issued, the party who issues the subpoena shall be responsible for the costs prior to and including the appearance time.

. . .

*Fees:*

The parties agree to pay the firm of Newman, McDonough, Schofel & Giger, P.C. the sum of $5,000 as an initial joint retainer, against which Ms. Schofel will bill her hourly rate for parent coordination work of $325.00. Unless otherwise ordered by the Court, each party will be responsible for one half of the retainer and all accrued fees. This retainer will be used to pay for fees for services that will be charged as follows:

. . .

4. For time spent preparing notes, recommendations or reports for the parties, the attorneys and/or the Court, the charge will be $325.00 per hour

. . .

Notwithstanding the above, the Parenting Coordinator reserves the right to assess costs disproportionately, if in the sole discretion of the Parenting Coordinator she determines either of the parties is abusing the process, or she determines the costs should be disproportionate for any other appropriate reason. Ms. Schofel will inform the parties in writing of her reasons and decision prior to any disproportionate assessment of costs.

. . .

Should either or both of the parties not pay the Firm, Ms. Schofel shall have the right to cease all work on this case until the balance is paid in full. In addition, on behalf of the Firm, to whom the fees are owed, Ms. Schofel may bring an Order to Show Cause, on notice to the parties and counsel (if any), for a judgment against the party who has not paid his/her share of Ms. Schofel's outstanding fees.

Both Segal and Lynch signed the retainer agreement on May 7, 2007.

In the months that followed, a series of disputes between Segal and Schofel erupted that culminated in numerous orders issued by the trial court, four of which form the basis for the issues now before this Court. Each of the orders related to whether Schofel was entitled to be awarded fees. More specifically, the disputes centered on fees Schofel charged for her work as a parenting coordinator, fees she sought for the time she spent compiling her response to grievances that Segal raised about her work as the parenting coordinator, fees she requested in connection with Segal's demands that she appear and participate in discovery, fees she sought for her involvement in a dispute about Segal's attempt to depose other members of her law firm, and counsel fees awarded to her by the trial and appellate courts.

Although the orders to some extent include decisions on more than one of these overlapping disputes, for purposes of clarity, our recitation of the facts will be divided in accordance with the essential subjects now at issue on appeal.

*Grievances Against the Parenting Coordinator*

Within ten days after the retainer agreement was executed, a dispute arose between the parties over an approaching trip to Florida involving Segal and the couple's son. Lynch wanted to know the airline and flight number that Segal would be using and Segal refused to disclose these details, asserting that he was not required to do so based on a court order. Schofel thought Lynch's request was reasonable and, being uncertain about the existence of a court order, she made a written inquiry to the court on May 17, 2007. The following day, counsel for Segal also wrote to the court voicing his objection to Schofel's inquiry. Separately, Segal and his counsel called upon Schofel to recuse herself from contin-

ued service as the parenting coordinator. When she did not do so, counsel advised her that he believed he would be forced to proceed by way of motion to secure her removal.

The dispute concerning whether Schofel should resign or be removed from service as the parenting coordinator and the reasons that Segal believed supported his objections to her remaining in that role continued. Included in that dispute was counsel's further letter contending that Schofel had made premature recommendations, had inappropriately contacted the court, and had denied Segal due process. On May 31, 2007, Schofel responded in a letter that quoted the termination and grievance procedure that was found in paragraph thirteen of the court's April 5, 2007, order appointing her.

For the next two months, Schofel continued to act as the parenting coordinator. The record reflects that she assisted the parties in trying to resolve several disagreements concerning weekend visitation, baseball and cheerleading activities, their son's permitted access to his cell phone, the children's camp and tutoring schedules, and vacation plans for the children in August. During the same time, counsel for Segal advised Schofel through exchanges of emails about a variety of concerns, including charges that Schofel had failed to schedule conferences, was wasting Segal's money, was requesting that the parties engage in communications in contravention of a court order, and was making recommendations that were both contrary to those made by a forensic psychologist and in blatant violation of the Guidelines.

On August 10, 2007, counsel for Segal notified Schofel in writing that "Mr. Segal is exercising his rights under the grievance procedures such that he hereby demands a meeting with you and with me present to discuss the various issues he has with your service as the Parenting Coordinator." Further correspondence was exchanged about the location of the meeting and whether Schofel should meet with Segal alone or with his attorney. Thereafter, on August 17, counsel for Segal sent Schofel a letter setting forth his terms for the meeting. That letter advised that "Mr.

Segal agrees to meet with you first to discuss the issues and if you cannot resolve same then Mr. Segal, through counsel, will submit a letter to you detailing the grievance wherein you will respond within 30 days in writing to same."

Although Segal and Schofel met to discuss his grievances on August 27, Schofel described the meeting in her letter to counsel for both parties as leaving her uncertain about the substance of his grievances. Schofel wrote that Segal "did not share what his concerns were. Rather, he stated that he came to listen to what I had to say." On August 31, 2007, Segal's attorney responded by contending that Schofel was aware of Segal's concerns because they had been raised throughout the time of her service in emails and in personal discussions.

On October 14, 2007, Segal sent Schofel an email in which he requested a meeting about Schofel's billing. The two then engaged in an exchange of communications concerning whether it was appropriate for Segal's attorney to be included in such a meeting if Lynch's attorney was not also present. It does not appear from the record that such a meeting ever took place.

On November 12, 2007, Segal sent Schofel an email that became the basis for the matter now before this Court. In that email, Segal listed twenty separate grievances that he had against Schofel. The following day, Schofel replied via email that she would send her response within the next thirty days. A week later, Schofel again emailed Segal. She reiterated that she intended to respond, but advised him that, in accordance with the terms of the retainer agreement relating to disproportionate assessment of costs, she believed he and not Lynch should be billed for the time it would take her to respond to the grievances. Her email further commented that in her view, responding to the grievances would be "a major undertaking, at considerable cost."

In a November 25 response, Segal agreed that Lynch should not pay fees relating to the grievances, and advised, "[i]n addition, if any court, any other governing body, or any governing committee believes at the end of the day that I should pay you to respond

to my grievance about your services, then I will pay it." The following day, Schofel responded, "Fair enough. Just so you know, I will charge you for the time it takes for me to respond to your grievance letter." Furthermore, she quoted the language concerning pay disputes found in the Guidelines and advised that she planned to follow that procedure with respect to the outstanding dispute about her parenting coordinator fee if they were not able to resolve it amicably. She commented as well that she had not yet brought the pre-existing fee dispute to the court's attention because she did not want to "prejudice [Segal] in the eyes of the Court."

On December 9, counsel for Segal advised the court in writing about the pre-existing parenting coordinator fee dispute. He asserted that Schofel was refusing to discuss the matter with Segal and he requested that the court direct her to address the issue with Segal directly before approaching the court. Schofel's December 14 letter to the court in response outlined the steps she had taken in an effort to resolve the dispute about parenting coordinator fees. On December 19, consistent with the Guidelines, the court issued an order, returnable January 4, 2008,[1] requiring Segal to show cause why an order should not be entered to (1) mandate that Segal "pay all presently due and owing invoices" from Schofel; (2) continue Schofel as parenting coordinator; and (3) grant such "further and additional relief as the Court may deem just and equitable. . . ."

On January 3, 2008, in advance of the return date for the Order to Show Cause, Schofel sent counsel for both parties her certification in response to the grievances that Segal had raised on November 12, 2007. The certification, spanning eighty-nine pages, responded individually to each of the twenty grievances and appended more than 200 pages of supporting exhibits. On Febru-

---

[1] The record reflects that this return date was adjourned and the dispute concerning the payment of Schofel's fees for her service as a parenting coordinator was addressed in connection with the resolution of Segal's grievances against her.

ary 15, Segal filed a certification with the court in response to the Order to Show Cause, listing his reasons why Schofel should be removed as the parenting coordinator and why he should not have to pay for her services. His response also included requests that the court conduct a hearing on the grievances and that the fee dispute be referred to the attorney fee arbitration system for resolution. Shortly thereafter, counsel for Segal transmitted to Schofel his client's proposed resolution of the issues of the outstanding parenting coordinator bills and the grievances. Segal proposed that Schofel pay him a sizeable sum and forgo receiving any payment from him. Schofel rejected his demand the following day.

On April 14, 2008, the court issued an order that resolved the dispute about the outstanding parenting coordinator fees and the grievances. That order denied Segal's request for a hearing, denied Segal's request that the dispute be sent to a Fee Arbitration Committee, found that Segal's grievances were without merit, denied Segal's request to remove Schofel[2] as the parenting coordinator, and ordered Segal to pay $45,433.52 to Schofel, representing $12,128.95 owed as of January 30, 2008, for her services as the parenting coordinator and $33,304.57 for her time spent responding to the grievances. The latter sum represented less than the full amount of Schofel's outstanding invoices, the court having declined to award her $6,467.50 for services that should have been performed instead by support staff.

The April 14, 2008, order was accompanied by a lengthy and detailed written opinion addressing each of the grievances individually and setting forth the basis for each of the court's findings. In relevant part, the court set forth the reasoning behind the decision that Schofel was entitled to be awarded fees for her time spent responding to the grievances, explaining:

---

[2] In a separate order dated April 14, 2008, the court granted Schofel's letter request that she be relieved from further service as the parenting coordinator.

Defendant also argues that neither the Court's April 5, 2007 Order nor Ms. Schofel's retainer agreement contains any language that would support Ms. Schofel's billing of fees for her responses to grievances filed by either party. The Court, however, notes that Ms. Schofel's retainer agreement specifically states that she will charge the parties for "time spent preparing notes, recommendations or reports for the parties, the attorneys and/or *the Court*" (emphasis added).

Furthermore, as addressed above, when Ms. Schofel indicated to plaintiff that he would be "assessed the fees for the time" it took Ms. Schofel to respond to his list of 20 grievances, plaintiff answered via email that "if any court, any other governing body or any governing committee believes at the end of the day that I should pay you to respond to my grievance about your services, then I will pay it."

Segal filed a motion seeking reconsideration of the April 14, 2008, order, together with a renewed request for a plenary hearing and a request for an award of counsel fees in his favor. Schofel opposed that motion and requested a further award of fees. On January 5, 2009, the court denied all of the requests, again accompanying the order with a written statement of reasons. In pertinent part for purposes of the issues before this Court, that statement explained again the basis for the original award to Schofel of fees incurred in responding to the grievance. The court commented that because Segal had signed a written retainer agreement in which he agreed to pay fees for Schofel's "time spent preparing notes, recommendations or reports to the Court," the award was authorized by an enforceable contract. *See* Pressler, *Current N.J. Court Rules,* comment 2.10 on *R.* 4:42–9(a) (2009).

*Discovery Demands Served on the Parenting Coordinator*

On February 19, 2008, which was shortly after Segal's grievances against Schofel were submitted to the court and before those grievances had been resolved, his attorney served subpoenas on Schofel and four members of her law firm demanding that they produce all documents relating to Segal's litigation with Lynch and ordering them to appear for depositions. The subpoena directed to Schofel also required that she produce any and all documents relating to any other matter in which she had served as a parenting coordinator.

Schofel responded in writing to the subpoena directed to her, explaining that, in accordance with her retainer agreement, she

would not testify at trial or at a deposition unless Segal first secured a court order. In addition, she advised that she would require payment of a $10,000 retainer in advance of any appearance to cover the cost of her preparation and participation. Counsel for Segal responded in writing, expressing his disagreement with Schofel's interpretation of the language in the retainer agreement, rejecting her demand for payment in advance and agreeing only that she would be paid for the time she spent at her deposition. In subsequent correspondence, counsel for Segal also asserted that Schofel's retainer language relating to testimony was in violation of the pilot program's model parenting coordinator order, which he believed evidenced a clear anticipation that parenting coordinators would provide both trial and deposition testimony.

When the matter remained unresolved, counsel for Segal filed a motion to compel Schofel and the other lawyers to appear for depositions, to produce the documents demanded, and for an award of counsel fees. Schofel responded with a motion for an order quashing the subpoena, compelling Segal to pay her outstanding fees, including those that by that time were included in the April 14, 2008, order, and for counsel fees. A separate motion to quash relating to the other lawyers in her firm also sought an award of counsel fees.

The court addressed the issues raised in these motions in two orders, each of which was supported by a written statement of reasons. In an order issued on June 24, 2008, the court denied Segal's requests to compel the other lawyers to produce documents and to compel depositions of three of the four members of Schofel's firm. The court's statement of reasons that accompanied the order explained that the subpoenas were quashed pursuant to *Rule* 1:9–2 because "compliance is unreasonable and oppressive." Notwithstanding that ruling as to three of the attorneys, the June 24, 2008, order granted Segal's request to depose one of the members of Schofel's law firm. That grant of relief, however, was bounded by directions that the deposition be confined to a limited

subject matter. Finally, the court granted the law firm's motion for an award of counsel fees, citing as its authority *Rule* 4:23–1(c), and denied Segal's counsel fee motion. An October 28, 2008, order fixed the fee award to the law firm, which was based on Schofel's certification of services, in the amount of $4,659.60. That order, quantifying the award of counsel fees to Schofel's law firm, referred to *Rule* 4:23–1(c) as its source of support without further explanation.

The motions relating to Schofel's participation in a deposition were addressed in a separate order dated June 26, 2008. According to that order, Schofel agreed to appear for a deposition that would be limited in scope, and required Segal to advance her a retainer in the amount of $2,600. In addition, the order denied Segal's motion to compel Schofel to produce documents regarding other matters in which she had served as a parenting coordinator and documents she had exchanged with members of her law firm. Finally, the order granted Schofel's request for counsel fees relating to the motion to compel the production of documents and directed her to submit her certification of services in that regard.

Once again, the court supported the order with a written statement of reasons. In relevant part, the court explained the decision to deny Segal's request for an award of counsel fees and to grant Schofel's responsive request for fees. Relying on *Rule* 4:23–1(c), the court reasoned that although Segal's motion to compel Schofel to appear for a deposition had resulted in her agreement to appear, her opposition to appearing had been based on the language of her retainer agreement that conditioned her appearance on being served with a court order. Finding nothing in that condition that violated the order that had appointed her to serve, the court concluded that her opposition was "substantially justified," and therefore satisfied the exception to a fee award found in the *Rule*. The court explained the decision to award fees in favor of Schofel by referring to *Rule* 4:23–1(c), and rejected an award to Segal on the ground that Segal's document demand was not similarly justified.

Segal filed a motion for reconsideration of the provision in the June 24, 2008, order awarding Schofel counsel fees. He pointed out that he had prevailed on his motion to compel as to one of the lawyers and asserted that Schofel's opposition to the motion to compel the deposition of that lawyer was baseless. He therefore argued that any award of fees to Schofel was inappropriate.

The law firm, describing itself as appearing pro se, and acting through Schofel, opposed reconsideration and cross-moved for counsel fees related to the motion for reconsideration. Schofel contended that, after she was relieved from her role as parenting coordinator, she had attempted to end her involvement with the matter. She asserted that Segal's motions had required her to respond and that she was entitled to counsel fees for those efforts.

On October 28, 2008, the court denied Segal's reconsideration motion and awarded the law firm fees in the amount of $1,096 for Schofel's time spent responding to that motion. In the statement of reasons that accompanied its order, the court stated that *Rule* 4:23–1(c) "does allow for third party fee awards," and therefore concluded that Segal's argument that the *Rule* only permitted fee awards to parties was baseless. The court also rejected Segal's argument that fees could not be awarded for the motion to compel because that motion was granted as to one of the lawyers in Schofel's firm. Furthermore, the court found no merit in Segal's argument that fees could not be awarded because the court had compelled the deposition of one of the lawyers, pointing out that the *Rule* permits an apportionment of fees when a motion is granted in part and denied in part. Finally, the court explained the award of counsel fees to Schofel's law firm in connection with the opposition to the motion for reconsideration by referring to the *Rule* and commenting that the award was justified because "the firm incurred these fees as a direct result of plaintiff's unsuccessful and groundless motion to compel discovery."

Thereafter, when the fees remained unpaid, the court entered an order on November 25, 2009, reducing the $45,433.52 debt owed to a judgment.

## II.

Following motion practice in the Appellate Division that is not germane to the issues before this Court, Segal filed his appeal from the trial court's orders of April 14, 2008, June 24, 2008, June 26, 2008, and October 28, 2008.

More specifically, he challenged the following awards: the $33,304.57 award to Schofel in the April 14, 2008, order representing compensation for time she spent responding to Segal's grievances; the award of $4,659.60 arising from the June 24, 2008, order for time Schofel spent responding to Segal's motion to compel discovery from the four other lawyers in her law firm; the unliquidated award included in the June 26, 2008, order for time Schofel spent on her opposition to Segal's motion to compel her to appear for a deposition and to produce documents; and the award of $1,096.00 in the October 28, 2008, order for time Schofel spent responding to Segal's motion for reconsideration relating to the June 24, 2008, order. In addition, Segal raised a general challenge to the trial court's denial of his request for a hearing on his grievances.

The Appellate Division, in a published decision, affirmed the trial judge's orders awarding fees to Schofel in all respects. *Segal v. Lynch*, 417 *N.J.Super.* 627, 11 *A.*3d 407 (App.Div.2011). Concerning the fees for time spent responding to Segal's grievances, the court wrote,

[h]ere, we do not view the parenting coordinator's fees for responding to plaintiff's grievance letter as attorney's fees, but we do find a contractual basis to pay for her time devoted to responding to the grievances. Under the retainer agreement signed by plaintiff, he agreed to pay for her services in a "report" to the court. Indeed, *parenting coordinator's response to the grievances served a dual purpose:* (1) a defense to the charges made against her; and (2) a report to the trial judge establishing the baselessness of the grievances. As the *Guidelines* make clear, a judge is obliged to resolve any dispute filed by a litigant against the parenting coordinator if the coordinator and the parent are unable to resolve that conflict themselves. *Without a report from the parenting coordinator in response to the grievance, the judge has no basis upon which to analyze the grievance and no way to determine if the grievance is meritorious.*

[*Id.* at 638–39, 11 *A.*3d 407.]

The panel also affirmed the award of fees under *Rule* 4:23–1(c) for Schofel's time [3] spent responding to the subpoenas. *Id.* at 647, 11 *A.*3d 407. The panel explained that the *Rule* does not require the party to prevail entirely in opposing a motion and does not require an express finding of bad faith by the trial judge as a condition of an award. *Ibid.* The panel also held that, pursuant to the *Rule,* "[s]urely 'reasonable expenses incurred in opposing the motion' should include expenses incurred in defending motions for reconsideration and appeal," and therefore upheld the award of fees for Schofel's time spent responding to the reconsideration motion. *Ibid.* Finally, the Appellate Division concluded that the trial court did not err in denying Segal a hearing on the grievances, holding that the Guidelines do not require the judge to hold a hearing but merely permit the dissatisfied party to request one. *Id.* at 643, 11 *A.*3d 407.

Schofel then moved before the Appellate Division for an award of attorney's fees incurred in connection with her successful defense of the appeal, citing *Rules* 2:11–4(a) and 5:3–5(c). By order dated March 17, 2011, the Appellate Division granted Schofel's motion and awarded her counsel fees pursuant to *Rule* 2:11–4.

Segal filed a petition for certification seeking review of all of the trial court's orders granting fees to Schofel, the trial court's denial of his request for a hearing on his grievances, and the order of the Appellate Division awarding counsel fees to Schofel in connection with her appeal.

This Court granted Segal's petition for certification, 207 *N.J.* 190, 23 *A.*3d 414 (2011), and stayed payment of all fees awarded pending appeal. We thereafter granted leave to the New Jersey

---

[3] Although the appellate court addressed the arguments Segal raised that had not been successful before the trial court, Segal's appeal rested in part on his assertion that in all of her efforts, Schofel acted as a "pro se attorney" and that status made it inappropriate to award her counsel fees. The panel did not separately address whether a pro se attorney could obtain attorney's fees under any of our rules.

State Bar Association and to the Association of Family and Conciliation Courts—NJ to participate as amici curiae.

## III.

Before this Court, the parties echo the arguments that they advanced at the trial and appellate levels. Segal asserts that fees for responding to a grievance are not authorized by the Guidelines, are prohibited by the *Rules of Professional Conduct, see RPC* 1.5 (prohibiting attorneys from charging fee for responding to ethical grievances), are not included in the retainer agreement, and offend sound public policy. He contends that Schofel's certification in response to the grievances is not a report to the court, that his email agreeing to pay the fees is insufficient to modify the parties' contract, and that the trial court erred in deciding the grievance dispute without a hearing. Moreover, he argues that Schofel, acting pro se, was not entitled to an award of counsel fees, because no attorney represented her. He challenges the court's use of *Rule* 4:23–1(c) to support the fee award relating to the discovery dispute, asserting that both that *Rule* and *Rule* 5:3–5 only permit fee awards to parties. Finally, he challenges the award of fees by the Appellate Division, arguing that *Rule* 2:11–4, which permits fees in family proceedings through its reference to *Rule* 4:42–9(a), is similarly limited to fees incurred by parties.

Schofel argues that she was entitled to fees for the time she spent responding to the grievances, because she did so in her capacity as the parenting coordinator who was preparing a report to the court. In the alternative, she argues that Segal should be estopped to deny his obligation to pay those fees because she relied on his representation in his email that he would do so.

As for the fees awarded in connection with the discovery dispute, Schofel asserts that they were not awarded to her as counsel fees but were in the nature of a fee to the parenting coordinator trying to enforce the earlier fee award. She argues that there are sound public policy reasons for permitting a parenting coordinator who is also an attorney to be awarded counsel fees

when proceeding pro se and contends that the Appellate Division was authorized to make the fee award to her for the work she performed on appeal. Finally, she argues that the court was entitled to issue its ruling on the grievances without convening a hearing and argues that requiring a hearing on grievances would be contrary to the expeditious approach created by the Guidelines.

Amicus New Jersey State Bar Association (NJSBA) argues that parenting coordinators should be permitted to be paid for the time that they spend responding to grievances from litigants, and warns that precluding courts from making such awards will dissuade professionals from serving in this important role. Conceding that the Guidelines are silent on the subject, amicus NJSBA urges this Court to infer that the intent of the Guidelines is to ensure that the parenting coordinator is compensated for all time spent on the matter and to reject Segal's argument based on *RPC* 1.5 as distinguishable. Finally, amicus NJSBA suggests that the order appointing a parenting coordinator or, if appropriate, the retainer agreement, be clarified on the subject of fees in order to avoid future disputes on the subject.

Amicus Association of Family and Conciliation Courts—NJ (AFCC–NJ) likewise urges this Court to authorize parenting coordinators to be compensated for the time they spend in responding to grievances, and warns that parenting coordinators will be reluctant to serve without this protection. Amicus AFCC–NJ argues that there is support for the award of fees relating to the grievance in the retainer letter and urges us to so conclude.

### IV.

This appeal involves a series of disputes [4] about awards of fees, which we can divide for purposes of our analysis into two groups. Accordingly, we address first the debate between the parties to

---

[4] It does not appear that there is any continuing dispute that Schofel was entitled to be paid $12,128.95 as ordered by the trial court for the work she performed as a parenting coordinator.

the appeal about whether Schofel was entitled to an award of parenting coordinator fees for the time she spent responding to Segal's grievances. Thereafter, we address the several disputes about counsel fees awarded in connection with the motions seeking to compel Schofel and the other lawyers in her firm to participate in discovery, the motions for reconsideration, and the successful defense of those orders before the Appellate Division.

### A.

Our consideration of whether there was a basis for an award of fees to the parenting coordinator for work on the grievances against her must begin with an explanation of the framework within which Schofel was appointed and the retainer agreement that she utilized. In 2007, this Court authorized a Pilot Program that would permit use of parenting coordinators in certain family disputes. The Pilot Program is governed by Guidelines promulgated by this Court which were based on a series of recommendations made by the Family Practice Committee in 2006.[5] The Morris–Sussex vicinage, in which the matrimonial dispute between these parties was venued, was selected to serve as one of the pilot vicinages for purposes of evaluating the use of parenting coordinators.

The Guidelines direct that parenting coordinators be compensated and require that they set forth their fees in a retainer agreement. The Guidelines establish different procedures to deal with grievances and pay disputes. Grievance procedures are set forth in the Termination/Grievance section. It provides that grievances are initiated by the submission of a written letter to the

---

[5] The Family Practice Committee, as part of the Rules Cycle of 2004–2006, had included the proposal to promulgate *Rule* 5:8–7, which would have created a statewide parenting coordinator program. This Court, after concluding that the concept had merit, elected instead to proceed by way of a Pilot Program that would permit an evaluation of the parameters of the program prior to any statewide implementation.

parenting coordinator, who must then provide a written response to both parties and the attorneys within thirty days.

The Pay Disputes section of the Guidelines authorizes a parenting coordinator who has not been timely paid to submit a letter to the court which may then issue an Order to Show Cause sua sponte requiring the party to show cause why the bill should not be paid.[6]

In 2005, before our Family Practice Committee's reports were issued and prior to our promulgation of the Guidelines governing parenting coordinators, the Interdisciplinary Association of Family and Conciliation Courts Task Force on Parenting Coordination published its Guidelines for Parenting Coordination (Task Force Guidelines). The Task Force Guidelines contain explicit language authorizing the court to award fees, including counsel fees, as part of a mechanism to resolve grievances:

> One grievance model requires that the complaining parent first set up and attend an appointment with the PC to discuss the grievance, prior to initiating any court proceedings for removal or complaining to the licensing board, in an attempt to resolve the grievance. If no resolution is reached, both parents and the PC then attend a judicially supervised settlement conference prior to any action being taken. *The court reserves jurisdiction to determine if the PC's time and expenses should be reimbursed in part or totally, including any attorney's fees incurred by the PC.* If either the complaining party or the PC believes that the complaint cannot be resolved, either party can file a motion to the court to terminate the PC's services. The judge is the final gatekeeper on the grievance process unless there is a PC certification body.
>
> [AFCC Task Force on Parenting Coordination, *Guidelines for Parenting Coordination* 23 (2005) (emphasis added).]

Although other states have incorporated this language into their guidelines or appointment order, therefore explicitly authorizing an award of fees to a parenting coordinator for time spent responding to grievances, our Family Practice Committee did not recommend it and our Guidelines do not include it.

Therefore, our Guidelines do not directly address the question that is before this Court and do not create a generally applicable

---

[6] This language is not included as part of the standard form of order appointing a parenting coordinator.

standard for deciding whether a parenting coordinator is entitled to be compensated for time spent responding to grievances. We turn, then, to an evaluation of the other potential sources of support for Schofel to demand, or for a court to direct, that Segal pay her fees for the time required to respond to a grievance. Those sources are the clause in the retainer agreement obligating the parties to compensate Schofel for work on reports to the court, the exchange of emails between Segal and Schofel concerning their understanding about Schofel's demand that she be paid for that time, and the inherent power of the court to sanction parties.

First, Schofel argues that there is ample authority for the award of fees for this purpose in the retainer agreement. She points to the language about payment for reports to the parties or the court as her support. Segal disagrees, arguing that Schofel should be prohibited by *RPC* 1.5 from charging a fee for her response to the grievance and that the ambiguity in the language of the retainer should be construed in his favor.

Although Schofel is an attorney whose conduct is generally governed by the *RPC*s, we do not extend the prohibition found in *RPC* 1.5 to an attorney, acting as a parenting coordinator, in the circumstances presented in this appeal. We decline to do so because the very nature of grievances against a parenting coordinator, and the mechanism for resolution of those grievances found in the Guidelines, is fundamentally different from ethics grievances against attorneys and the system we have created for raising and adjudicating them that is the focus of *RPC* 1.5.

The retainer agreement, although it could have been more precise, made clear that the parties would pay for time expended in preparing reports to the court. Because the response to the grievances in this matter was not simply undertaken based upon the requirement for responding to such grievances found in the Guidelines, but was in part necessitated by the issuance of the court's Order to Show Cause, it was akin to a report to the court of the kind contemplated by the retainer agreement.

Nor did Schofel simply forge ahead with the preparation of a thorough analysis and response with the intention of issuing a bill to an unsuspecting grievant. Instead, she notified Segal in advance of her position with respect to her right to be compensated and warned him of the amount of time and effort that an appropriate response would require. That exchange, contrary to Schofel's argument, did not suffice to modify the terms of the contract either because the obligation to pay for this service was already owed, in which case there was no consideration, *see Cnty. of Morris v. Fauver*, 153 *N.J.* 80, 100, 707 *A.*2d 958 (1998); *Williston on Contracts* § 7:37 (4th ed. 2008) (explaining that consideration cannot be a promise to perform a pre-existing duty), or because Segal's response was conditioned on a court agreeing with Schofel's interpretation, *Fauver, supra,* 153 *N.J.* at 100, 707 *A.*2d 958 (requiring mutual assent to support modification).

■ Instead, the exchange of emails, in our view, estops Segal to deny that he agreed to pay for Schofels time spent in responding to his grievance, at least to the extent that a court reviewed it and found it reasonable and compensable. The language Segal used in his email would fall short of the requirements for promissory estoppel, but falls squarely within the ambit of an equitable estoppel analysis. We reach this conclusion because of the difference between the elements required for the two types of estoppel.

■ The traditional elements of promissory estoppel require the party to show that there has been "(1) a clear and definite promise; (2) made with the expectation that the promisee will rely on it; (3) reasonable reliance; and (4) definite and substantial detriment," *Toll Bros., Inc. v. Bd. of Chosen Freeholders of the Cnty. of Burlington,* 194 *N.J.* 223, 253, 944 *A.*2d 1 (2008), notwithstanding a lack of consideration, *see Restatement (Second) of Contracts,* § 139 comment a (1981) (explaining that "[t]his Section is complementary to § 90, which dispenses with the requirement of consideration").

In contrast, the related doctrine of equitable estoppel provides that "the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might have otherwise existed ... as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse." *Carlsen v. Masters, Mates & Pilots Pension Plan Trust*, 80 *N.J.* 334, 339, 403 *A.*2d 880 (1979) (citations omitted). Equitable estoppel does not require a definite promise, but may be invoked when there is "conduct, either express or implied, which reasonably misleads another to his prejudice so that a repudiation of such conduct would be unjust in the eyes of the law." *McDade v. Siazon*, 208 *N.J.* 463, 480, 32 *A.*3d 1122 (2011) (quoting *Dambro v. Union Cnty. Park Comm'n*, 130 *N.J.Super.* 450, 457, 327 *A.*2d 466 (Law Div.1974)).

Our decision to affirm the award of fees to Schofel, acting in her role as a parenting coordinator, for her work in responding to the grievances therefore draws support from several sources. First, the Guidelines required her, after an informal effort to resolve the grievances, to reply to them in writing, and that directive is included in both the model form of order appointing a parenting coordinator and in the order used in appointing Schofel in this matter. That writing, however, is part of a process that may result in a hearing during which the court will be called upon to resolve the grievance. Although there was no formal hearing in this matter, the court issued an Order to Show Cause that encompassed Segal's grievances, pursuant to which Schofel had no option but to respond and to do so in a manner consistent with a response to any Order to Show Cause.

Second, the Guidelines require that the parenting coordinator be compensated in accordance with a retainer agreement. In this matter, Schofel and the parties executed a retainer agreement that obligated the parties to pay for her time in preparing a report to the court and authorized her to impose fees disproportionately.

Third, although those clauses in the Guidelines and in the retainer agreement would not, standing alone, obligate Segal to pay for the written response to his grievances, Segal's statements in the exchange of emails between the two operate to equitably estop him to deny that he is responsible for payment of the fees.

Even were all of these considerations insufficient to support an award of fees, in this case the court eventually considered and rejected every one of Segal's grievances as completely meritless. Some of them, based on the record that Schofel compiled in response, were not only meritless, but bordered on the frivolous; some of them were baldly inaccurate when tested against the record of communications and meetings between the parties. The court, however, could only have determined that the grievances were meritless by examining the thorough record and the point-by-point refutation that Schofel compiled. In that context, the court could have exercised its inherent power to sanction a party for behavior that is vexatious, burdensome and harassing. *See, e.g., Brundage v. Estate of Carambio*, 195 *N.J.* 575, 610, 951 *A.*2d 947 (2008) (recognizing inherent power of courts to sanction parties as means of enforcing ordinary rules of practice); *Abtrax Pharm. v. Elkins–Sinn*, 139 *N.J.* 499, 513, 655 *A.*2d 1368 (1995) (recognizing inherent power to punish discovery violations); *Dziubek v. Schumann*, 275 *N.J.Super.* 428, 439–40, 646 *A.*2d 492 (App.Div.1994) (reasoning without deciding that court's inherent power may include awarding attorney's fees by way of sanction). Although it is a power that should be invoked sparingly, the compelling circumstances presented in this record would have supported the award on that alternate ground.

Although Segal has not challenged the quantum of the fees that were awarded for Schofel's response to the grievances, we note that the court reviewed Schofel's certification of services, concluding that portions of the work were not compensable and deducting those charges from the sum awarded. In doing so, the court discharged its duty to ensure that the fee awarded was both

reasonable and appropriate and we discern no basis on which to conclude otherwise.

We do not intend to suggest by our reasoning in this matter that parenting coordinators can rely on the Guidelines or the language in the order of appointment alone to support a request that they be compensated for time spent in responding to grievances. Nor would the rather imprecise language in Schofel's retainer agreement, standing alone, support such a demand. Instead, we base our decision on the confluence of factors that are perhaps unique to this record, including all of those considerations, coupled with Schofel's advance cautionary advice about her position on compensation, Segal's responding email, Schofel's reliance on that apparent agreement with her interpretation, and the eventual conclusion of the court that not a single one of the grievances had any merit. It is only in considering all of those factors that we find support for the award.

## B.

We reach a different conclusion concerning the awards of fees for which the trial court found support in *Rule* 4:23–1(c). Our conclusion requires that we set forth the language of the *Rule,* which provides in relevant part:

4:23-1 Motion for Order Compelling Discovery

A party, upon reasonable notice to other parties and all persons affected thereby, may apply for an order compelling discovery as follows:

(a) Motion. If a deponent fails to answer a question propounded or submitted under *R.* 4:14 or 4:15, or a corporation or other entity fails to make a designation under *R.* 4:14-2(c) or 4:15-1, the discovering party may move for an order compelling an answer or designation in accordance with the request. When taking a deposition on oral examination, the proponent of the question may complete or adjourn the examination before applying for an order. If the court denies the motion in whole or in part, it may make such protective order as it would have been empowered to make on a motion pursuant to *R.* 4:10-3.

(b) Evasive or Incomplete Answer. For the purposes of this subdivision an evasive or incomplete answer is to be treated as a failure to answer.

(c) Award of Expenses of Motion. If the motion is granted, the court shall, after opportunity for hearing, require the party or deponent whose conduct necessitated the motion to pay to the moving party the reasonable expenses incurred in

obtaining the order, including attorney's fees, unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust.

■ The *Rule* is not a source of authorization to courts to award fees as a sort of generally available sanction for discovery violations, but instead is confined by its terms to very specific kinds of discovery violations. Although it is a mandatory award, it is limited in its scope. The *Rule*, therefore, would only authorize an award of fees to Schofel if Segal failed to respond to a question at a deposition, gave an incomplete or evasive answer, or, presumably if he refused to be sworn, *R.* 4:14–3(b), or failed to attend at all, *R.* 4:14–8. Alternatively, the *Rule* would permit Schofel to be awarded fees if she secured a denial of a like motion filed by Segal.

None of these circumstances occurred in this case and therefore none of the limited grounds that *Rule* 4:23–1 designates as being a permissible support for an award was presented as the basis on which Schofel sought, and on which the court awarded, fees. Instead, she requested fees based on her motion to quash and her successful defense against his motion to compel. The latter, however, related to the disputes about production of documents and Schofel's assertion that she should be paid a retainer in advance of appearing. We do not read the *Rule* to serve as a broad mandate for fee awards attendant upon any motion to compel, which is the manner in which the trial court apparently believed that it could be applied. Rather, we interpret it in accordance with its stated limitations, and therefore conclude that its authorization is reserved to the specific circumstances to which its language clearly refers.

It is for this reason that we reverse the awards of fees included in the orders entered on June 24, 2008, June 26, 2008, and October 28, 2008, to the extent that they were grounded on an application of the authority embodied in *Rule* 4:23–1(c). We therefore decline to consider the other arguments that Segal raised concerning the bases for those fee awards.

■ Next, we consider the grant of a fee to Schofel for the time she spent attending her own deposition. Although this raises a closer question, we conclude that the award was permitted under the circumstances. The model order of appointment, and the form of order utilized in this case, includes a provision that the testimony of a parenting coordinator "shall be deemed expert testimony if qualified and paid accordingly," but that language cannot support an award because Schofel's deposition was limited to questions concerning her role as a parenting coordinator. Because her deposition therefore was confined to her factual testimony and was not qualified as expert testimony, the appointment order cannot be the source for an order directing that she be compensated for the time she spent at her deposition.

Nevertheless, the time Schofel spent being deposed fell not only within the ambit of her response to the grievances, but was squarely addressed in her retainer. That agreement gave clear notice that if she was subpoenaed to testify at a deposition or at trial, her costs and her appearance time would be compensated at her usual hourly rate. We see no ground on which to conclude that the trial court erred in making that award.

## C.

Segal also challenges the award of fees to Schofel for the work she performed before the Appellate Division. He first argues that because she appeared pro se, she is not entitled to an award of counsel fees. He further contends that she is not entitled to a fee pursuant to *Rule* 5:3–5, because it only pertains to fee awards to parties.

Schofel asserts that the Appellate Division has the authority to award fees for appellate services pursuant to *Rule* 2:11–4, *see Trocki Plastic Surgery Ctr. v. Bartkowski*, 344 *N.J.Super.* 399, 407, 782 *A.*2d 447 (App.Div.2001), *certif. denied*, 171 *N.J.* 338, 793 *A.*2d 716 (2002), and that the fact that she is representing herself does not bar her ability to recover, *ibid.* In the alternative, Schofel finds support for her fee award in *Rule* 5:3–5(c), which

permits an order that fees be paid by a party in an action on "claims relating to family type matters." Although conceding that courts have interpreted this provision to apply only to fees payable to parties, she urges this Court to extend the provision's reach to include a parenting coordinator because her fees necessarily bear upon the apportionment of total costs between the parties. She argues that this Court should relax *Rule* 5:3–5(c) to permit an award to a parenting coordinator in the interests of fairness and justice.

Moreover, Schofel asserts that although she is an attorney, the fees awarded to her are not attorney's fees but instead were fees to a parenting coordinator who was seeking to enforce an award pursuant to the Guidelines. Schofel cites three public policy reasons that, in her view, suggest that this Court should allow fees in situations like this one. First, she contends that denying her fees for her pro se work would be unfair because it would force court-appointed professionals who are also attorneys to hire outside counsel to represent them. Second, she contends that permitting her to be awarded fees would deter litigants from forcing court-appointed professionals to respond to meritless grievances. Third, she argues that because time is money for attorneys and "[t]he time spent by an attorney defending a frivolous claim could have been spent working on a matter for a paying client," *Deutch & Shur, P.C. v. Roth,* 284 *N.J.Super.* 133, 140, 663 *A.*2d 1373 (Law Div.1995), she should be permitted to recoup the value of the time spent trying to enforce an order for payment of her fees through a further award of attorney's fees, *see Gyimoty v. Gyimoty,* 319 *N.J.Super.* 544, 550, 725 *A.*2d 1189 (Ch.Div.1998).

■ We find Schofel's arguments on this point to be unpersuasive. First, to the extent that she asserts that she was acting as a parenting coordinator who was seeking to enforce a previously awarded fee, we see no reason to treat her any more indulgently than every other pro se litigant. Just as others who appear in our courts seeking justice are not compensated for the value of the time they expend in that effort, so too is Schofel prohibited from

being paid for the time she spent appearing on her own behalf. Nothing about her status as a parenting coordinator entitled her to be compensated for her time arguing in court for her fee or defending against Segal's appeal.

Schofel's alternate argument, that her status as an attorney entitled her to a counsel fee, is similarly unpersuasive. We perceive in this record no basis on which to conclude that attorneys who represent themselves are entitled to be paid for their time when all other litigants who choose to represent themselves would be denied such compensation. We recognize that historically courts allowed attorneys to be awarded fees when appearing pro se. *See Drake v. Berry*, 42 *N.J.L.* 60, 61 (Sup.Ct.1880) ("Where an attorney is a party to an action, and obtains a judgment in his favor, he is entitled to the same costs as if he had conducted the action as attorney for some other person, and not merely to the costs which another person suing or defending in person would be entitled to."); *Flaacke v. Jersey City*, 33 *N.J. Eq.* 57, 58 (Ch.Ct.1880) ("A solicitor who is a party to a suit and appears in his own person, is entitled to the allowances made by the fee bill for his services therein, except, of course, for a retaining fee."). However, our courts long ago recognized that "there is a conflict of authority as to whether an attorney conducting a case in his own behalf is entitled to taxed fees therefor as costs." *Henn v. Heath*, 101 *N.J. Eq.* 347, 349, 139 *A.* 406 (Ch.Ct.1927).

That conflict in authority continued following the adoption of our modern *Rules*. *Compare Deutch, supra*, 284 *N.J.Super.* at 140–41, 663 *A.*2d 1373 (concluding that language of *N.J.S.A.* 2A:15–59.1 "falls well short of manifesting a clear intent to alter the long-standing principle that an attorney acting *pro se* can recover attorney's fees in the same way as a represented litigant can"), *and Hrycak v. Kiernan*, 367 *N.J.Super.* 237, 240–41, 842 *A.*2d 313 (App.Div.2004) (holding that attorney is entitled to fees for the time expended in his collection efforts, as provided in retainer agreement), *with Gruber & Colabella, P.A. v. Erickson*,

345 *N.J.Super.* 248, 253, 784 *A*.2d 758 (Law Div.2011) (declining to enforce retainer and holding that "when a law firm appearing pro se prevails in an action to collect legal fees from a former client, it is not entitled to recover additional attorney's fees for its collection efforts"), *and Asaadi v. Meltzer,* 280 *N.J.Super.* 68, 75, 654 *A*.2d 506 (Law Div.1994) (denying award of counsel fees to pro se attorney pursuant to *N.J.S.A.* 2A:15–59.1).

Courts concluding that fees may not be awarded to an attorney acting pro se have identified the policy rationales that support their conclusion. In the context of the frivolous litigation statute, one court cited concerns that "the attorney appearing *pro se* and requesting a fee is taking advantage of a remedy designed to offset the burden of obtaining such representation, especially for the poor." *Asaadi, supra,* 280 *N.J.Super.* at 73, 654 *A*.2d 506. It commented that allowing such fees "could lead to the *pro se* attorney prolonging litigation in order to generate an award of greater fees, which might, in turn, lead to the filing of frivolous claims, defenses or procedures." *Ibid.*

Courts have also observed that allowing attorney's fees in such circumstances would be an unfair penalty and would amount to a windfall for the law firm. *Gruber, supra,* 345 *N.J.Super.* at 252, 784 *A*.2d 758. Most significantly, one court emphasized that "to hold otherwise 'would in effect create two separate classes of pro se litigants—those who are attorneys and those who are not—and grant different rights and remedies to each.'" *Ibid.* (quoting *Trope v. Katz,* 11 *Cal.*4th 274, 277, 45 *Cal.Rptr.*2d 241, 244, 902 *P*.2d 259, 262 (1995)). Such a result, the court reasoned, would "undermine the public confidence in the judicial system." *Id.* at 253, 784 *A*.2d 758.

Decisions issued by our Appellate Division are similarly in conflict on the question. In *Brach, Eichler, Rosenberg, Silver, Bernstein, Hammer & Gladstone, P.C. v. Ezekwo,* 345 *N.J.Super.* 1, 783 *A*.2d 246 (App.Div.2001), the appellate panel held that a law firm representing itself pro se could collect attorney's fees pursuant to the offer of judgment rule. *Id.* at 18–19, 783 *A*.2d 246

(construing provisions of *Rule* 4:58–2). The court relied on the rationale articulated in *Deutch, supra,* and rejected the reasoning of the court in *Asaadi, supra,* concluding that *"Deutch & Shur* represents the sounder view." *Id.* at 18, 783 *A.*2d 246.

Most recently, however, in *Alpert, Goldberg, Butler, Norton & Weiss, P.C. v. Quinn,* 410 *N.J.Super.* 510, 983 *A.*2d 604 (App.Div. 2009), *certif. denied,* 203 *N.J.* 93, 999 *A.*2d 462 (2010), the Appellate Division held that counsel proceeding pro se cannot recover attorney's fees for frivolous litigation because *Rule* 1:4–8 "specifically permits only the reimbursement of attorneys' fees and expenses incurred by a party. It does not permit the reimbursement of a party's loss of income in dealing with frivolous litigation." *Alpert, supra,* 410 *N.J.Super.* at 545, 983 *A.*2d 604. The panel explained that this reasoning also applies to attorneys appearing pro se, because "[t]o compensate an attorney for his lost hours would confer on the attorney a special status over that of other litigants who may also be subject to frivolous claims and are appearing pro se." *Id.* at 546, 983 *A.*2d 604. Thus, "an attorney appearing pro se is not entitled to fees unless they are actually incurred as opposed to imputed." *Id.* at 547, 983 *A.*2d 604. The panel noted, however, that its holding was "directed solely to the language of *Rule* 1:4–8(d)(2)" and did not deal with "the award of fees otherwise authorized by contract, rule, or statute." *Alpert, supra,* 410 *N.J.Super.* at 546 n. 8, 983 *A.*2d 604.

Only one published decision has addressed directly a court-appointed professional's ability to obtain pro se attorney's fees. In *Gyimoty, supra,* 319 *N.J.Super.* 544, 725 *A.*2d 1189, a court-appointed guardian ad litem brought an action to enforce the court's prior orders for payment of fees for services rendered. *Id.* at 548, 725 *A.*2d 1189 (construing action in reliance on enforcement mechanism of *Rule* 1:10–3). Although the plain language of the *Rule* was limited to litigants in the action, the Family Court relaxed its requirements pursuant to *Rule* 1:1–2(a), concluding that to do otherwise would result in an injustice. *Gyimoty, supra,* 319 *N.J.Super.* at 549–50, 725 *A.*2d 1189. Thus, the court held

that *Rule* 1:10–3 could also apply to a guardian ad litem seeking enforcement of an order. *Gyimoty, supra,* 319 *N.J.Super.* at 549–50, 725 *A.*2d 1189.

Furthermore, the court held that the guardian ad litem, who was also an attorney representing himself pro se in connection with the *Rule* 1:10–3 motion, was entitled to attorney's fees for his time expended to bring the enforcement action. *Gyimoty, supra,* 319 *N.J.Super.* at 552, 725 *A.*2d 1189. In doing so, the court adopted the rationale in *Deutch, supra,* and rejected that expressed in *Asaadi, supra.* The court noted that "there is no valid reason nor policy evident in the court rule to encourage a guardian ad litem or court appointed attorney to engage the services of another attorney to prosecute such a motion." *Gyimoty, supra,* 319 *N.J.Super.* at 552 n. 3, 725 *A.*2d 1189.

The conflicting decisions found in our trial and appellate courts express a variety of policy considerations in support of or in opposition to permitting attorneys to be awarded counsel fees for representing themselves. In our analysis of which represents the better rule, we note that the question is one that the United States Supreme Court has also addressed. That Court, in construing the provisions of 42 *U.S.C.* § 1988, has concluded that an attorney representing himself or herself cannot claim the benefit of that statute's attorney's fees provision. *Kay v. Ehrler,* 499 *U.S.* 432, 437–38, 111 *S.Ct.* 1435, 1437, 113 *L.Ed.*2d 486, 492–93 (1991).

The United States Supreme Court identified several policy reasons for that conclusion. Most of the Court's reasons for prohibiting an award of attorney's fees to an attorney who represents himself or herself in an action reveal the Court's preference for encouraging all litigants to engage the services of independent counsel. As such, the Court commented on the need for even a pro se attorney to have counsel capable of "framing the theory of the case, evaluating alternative methods of presenting the evidence, cross-examining hostile witnesses, formulating legal arguments, and ... making sure that reason, rather than emotion, dictates the proper tactical response to unforeseen developments

in the courtroom." *Id.* at 437, 111 *S.Ct.* at 1438, 113 *L.Ed.*2d at 493. Thus, the Court concluded that allowing pro se attorney litigants to secure an award of attorney's fees would create an unwanted disincentive for attorneys to hire counsel. *Id.* at 438, 111 *S.Ct.* at 1438, 113 *L.Ed.*2d at 493.

Although the decisions that the parties have cited are in conflict, we find the reasoning of those precedents that reject counsel fee awards to attorneys who represent themselves to be persuasive in the circumstances of this appeal. Certainly, in the context of an attorney who acted as a parenting coordinator and who thereafter sought to enforce her entitlement to parenting coordinator fees, it is consistent with our broader approach to the treatment of those who represent themselves. We reach no different result to the extent that Schofel performed the work on behalf of the other lawyers in her law firm who had been subpoenaed for depositions or represented her firm in connection with the motions for reconsideration. Similarly, the work that she performed on appeal was work that she prosecuted through self-representation and not compensable under the circumstances. We see no basis in this record on which to advantage Schofel, the self-represented attorney, by permitting her to be compensated for her time expended in securing relief when others who represent themselves would be precluded from being compensated for their time.

### D.

■ Finally, we address and we reject Segal's assertion that he was entitled to a hearing on the subject of his grievances. The Guidelines, contrary to his assertion, do not mandate a hearing on grievances, but merely afford a party who has an unresolved grievance against a parenting coordinator the opportunity to request one. Nor do we agree with his assertion that he had factual disputes with Schofel that were sufficient to entitle him to an evidentiary hearing.

As is particularly the case in matters that arise in the Family Part, a plenary hearing is only required if there is a genuine,

material and legitimate factual dispute. *See, e.g., Lepis v. Lepis,* 83 *N.J.* 139, 159, 416 *A.*2d 45 (1980) (holding that "a party must clearly demonstrate the existence of a genuine issue as to a material fact before a hearing is necessary"); *Faucett v. Vasquez,* 411 *N.J.Super.* 108, 128, 984 *A.*2d 460 (App.Div.2009) (explaining that party's "conclusory certifications" are insufficient to warrant plenary hearing in child custody dispute), *certif. denied,* 203 *N.J.* 435, 3 *A.*3d 1225 (2010); *Hand v. Hand,* 391 *N.J.Super.* 102, 105, 917 *A.*2d 269 (App.Div.2007) (explaining that hearing is required only when there "is a genuine and substantial factual dispute"); *Pfeiffer v. Ilson,* 318 *N.J.Super.* 13, 14, 722 *A.*2d 966 (App.Div. 1999) (holding that plenary hearing is only required in child removal cases upon prima facie showing that genuine issue of fact exists bearing upon critical question); *Dunne v. Dunne,* 209 *N.J.Super.* 559, 571–72, 508 *A.*2d 273 (App.Div.1986) (concluding that hearing is only required if there are credibility issues and "diverse factual contentions").

In reviewing the record relating to the grievances, we echo the trial court's observation that "[m]erely alleging that statements are 'an absolute lie' or 'not true' does not provide the Court with evidence on which it can rely." Nor do assertions of this nature constitute the sort of factual basis on which a court would be required to conduct a hearing. Nothing in Segal's submissions to the court demonstrated that there was a factual dispute that would warrant testimony or that would require resolution in a plenary hearing. *See Furst v. Einstein Moomjy, Inc.,* 182 *N.J.* 1, 24, 860 *A.*2d 435 (2004) (holding that "plenary hearing should be conducted only when the certifications of counsel raise material factual disputes that can be resolved solely by the taking of testimony").

On the contrary, the record demonstrates that the grievances could be resolved based on the documentary evidence that Schofel submitted in response to Segal's assertions. There were no matters that demanded a finding on credibility and all of the factual issues relevant to the grievances were addressed in the

correspondence, recordings and reports that Schofel appended to her certification. We discern no error in the trial court's conclusion that Segal did not demonstrate any ground on which to be afforded an evidentiary hearing.

## V.

The judgment of the Appellate Division is affirmed to the extent that it affirmed the trial court's April 14, 2008, order awarding fees to Schofel for her work in responding to the grievances and to the extent that it affirmed the trial court's rejection of Segal's argument that he was entitled to an evidentiary hearing on his grievances; in all other respects the judgment of the Appellate Division is reversed.

Justice ALBIN, dissenting in part, concurring in part.

This appeal is a case study in the complete breakdown of the role of the parenting coordinator. A parenting coordinator is appointed to assist parties in resolving differences in their parental obligations, hopefully advancing their children's best interests. Here, the parenting coordinator, Linda Schofel, spent most of her time answering one parent's grievances—not about the other parent but about her conduct as a parenting coordinator. Moses Segal was ordered to pay Ms. Schofel $12,128.95 for her services as a parenting coordinator. He also was compelled to pay Ms. Schofel $33,304.57 for her time spent answering Segal's two-page email setting forth twenty concise grievances about Schofel's conduct as a parenting coordinator. I do not suggest that Ms. Schofel did not prove the lack of merit of Segal's grievances in her eighty-nine-page certification supported by two volumes of exhibits. But her response was over the top, and the court should have intervened to stop this sideshow when it became clear that the parenting coordinator could no longer play the role of conciliator and was involved in a caustic conflict with one parent.

The issue here is whether Segal is obliged to pay Ms. Schofel $33,304.57 for responding to his grievances. I agree with the

majority that neither the Parenting Coordinator Pilot Program Implementation Guidelines (Parenting Coordinator Guidelines) nor the "rather imprecise language in Schofel's retainer agreement" provide a sufficient basis for requiring Segal to compensate Schofel for her response to Segal's grievances. *See ante* at 255–56, 48 *A*.3d at 343. I do not agree with the majority that the unremarkable email exchanges between Segal and Schofel equitably estopped Segal from challenging Schofel's $33,304.57 bill for services in responding to the grievances. For that reason, I respectfully dissent.

## I.

After the court appointed Ms. Schofel as parenting coordinator in this case, she and Segal quarreled over many issues, including her bills. Indeed, less than two months after her appointment, Segal sought her removal. In a letter responding to Segal's complaints as well as his demand that she remove herself from the case, Schofel directed Segal to the grievance procedures outlined in the parenting coordinator appointment order.[1] Later, as the conflict between the two escalated, Segal's attorney sent Schofel a letter stating that Segal wished to "exercise[ ] his rights under the grievance procedures." Schofel and Segal were unable to resolve their differences in an in-person meeting and several informal written communications. Thereafter, Segal sent Schofel a two-page email listing twenty grievances.

---

[1] The grievance procedures set forth in the order appointing Schofel as parenting coordinator provide:

> A person having a complaint or grievance shall discuss the matter with the Parenting Coordinator in person in an attempt to resolve it before pursuing it in any other manner. If the issue remains unresolved, the aggrieved party shall submit a written letter detailing the complaint or grievance to the Parenting Coordinator with a copy to the other party [and] both attorneys.... The Parenting Coordinator shall within thirty (30) days provide a written response to both parties and the attorneys.... In situations where the grievance or complaint is not resolved by this process a hearing may be requested of the court by the dissatisfied party to address the issues that have been raised and make a final determination.

The two then engaged in an exchange of emails. Schofel explained that she believed that Segal, not his former wife, should be billed for the time spent responding to his grievances and that her response would "be a major undertaking, at considerable cost." Segal answered that he agreed that his former wife "should not pay any fees regarding the grievance procedure." He added, "[I]f any court, any other governing body or any governing committee believes at the end of the day that I should pay you to respond to my grievance[s] about your services, then I will pay it." Schofel replied, Fair enough. She also made clear that she would "charge [Segal] for the time it takes for [her] to respond to [his] grievance letter" and advised him of the relevant procedure concerning "a fee dispute with a parenting coordinator."

Later, the trial court ordered Segal and Schofel to present arguments regarding Segals dispute over her fees and his request that Schofel be removed from the case. In defending herself, Schofel filed an eighty-nine-page certification with two volumes of exhibits. Ultimately, the court found in favor of Schofel and awarded her $33,304.57 for responding to Segal's grievances— crediting her for expending 100 hours at $325 per hour, plus costs.

## II.

### A.

The line in Segal's email that has sparked the majority's equitable estoppel theory is the one where Segal states, "[I]f any court . . . believes at the end of the day that I should pay you to respond to my grievance[s] about your services, then I will pay it." The majority apparently believes that statement gave Schofel a guarantee that her time responding to Segals grievances would be paid by him and that without that assurance Schofel would not have replied to the grievances. However, Segal merely stated the obvious—if a court ordered him to pay the bill he would do so. He could agree to no less. Segal never conceded that Schofel was entitled to be paid for replying to his grievances based on the

retainer agreement or Parenting Coordinator Guidelines. Indeed, the majority holds that neither the retainer agreement nor the Guidelines stand as an independent basis for Schofel's fee award for responding to the grievances.

Moreover, Schofel cannot and has not claimed that she would not have responded to Segal's grievances in the absence of his email. The order appointing Schofel as a parenting coordinator provided that she give a written response to a grievance within thirty days. Therefore, Schofel was not goaded into responding to the grievances by Segal's email; she was obligated to do so.

Schofel's own statements at oral argument before this Court clearly show that she would have issued her eighty-nine-page certification and two volumes of exhibits regardless of any payment guarantees made by Segal. In response to a question, Schofel remarked, "When I prepared this response, I wasn't thinking about the fees that I might be earning. . . . Under the circumstances clearly I felt that I needed to defend myself. I would not want the judge to believe that these things were true when this judge had trusted me. . . ." Schofel responded not because Segal guaranteed payment of her grievance-related fees but because she felt her reputation had been unfairly attacked. In any event, the order appointing her as parenting coordinator required that she respond.

Under all of these circumstances, the doctrine of equitable estoppel cannot be invoked to bar Segal from challenging the legality of Schofel's charging for costs related to her response to his grievances.

## B.

"Estoppel is 'an equitable doctrine, founded in the fundamental duty of fair dealing imposed by law, that prohibits a party from repudiating a previously taken position when another party has relied on that position to his detriment.'" *Casamasino v. City of Jersey City,* 158 *N.J.* 333, 354, 730 *A.*2d 287 (1999) (quoting *State v. Kouvatas,* 292 *N.J.Super.* 417, 425, 678 *A.*2d 1178 (App.Div.

1996)). "[E]quitable estoppel is applied 'only in very compelling circumstances,' 'where the interests of justice, morality and common fairness clearly dictate that course.'" *Palatine I v. Planning Bd.*, 133 *N.J.* 546, 559, 628 *A.*2d 321 (1993) (internal citations omitted).

Under this doctrine, "one may, by voluntary conduct, be precluded from taking a course of action that would work injustice and wrong to one who with good reason and in good faith has relied upon such conduct." *Middletown Twp. Policemen's Benev. Ass'n Local No. 124 v. Twp. of Middletown*, 162 *N.J.* 361, 367, 744 *A.*2d 649 (2000) (quoting *Summer Cottagers' Ass'n of Cape May v. City of Cape May*, 19 *N.J.* 493, 503–04, 117 *A.*2d 585 (1995)) (internal quotation marks omitted). "In short, to establish equitable estoppel, plaintiffs must show that defendant engaged in conduct, either intentionally or under circumstances that induced reliance, and that plaintiffs acted or changed their position to their detriment." *Knorr v. Smeal*, 178 *N.J.* 169, 178, 836 *A.*2d 794 (2003) (citing *Miller v. Miller*, 97 *N.J.* 154, 163, 478 *A.*2d 351 (1984)).

Segal never promised that he would voluntarily pay Schofel's fees; he only stated he would do so if ordered by a court. No one suggests that Segal would have been required to pay the costs of Schofel's response if the court found the grievances meritorious. Accordingly, Segal never repudiated a previous position he had taken. He had a right to challenge the grievance-related fees. In addition, Schofel cannot claim reliance on Segal's email as the basis for her response to his grievances. Not only was she required to respond under her letter of appointment as parenting coordinator, but she wanted to do so to defend her reputation. In short, the doctrine of equitable estoppel does not apply here. If Segal was not required to pay for the costs of Schofel's response to the grievances based on the retainer agreement or the Guidelines—as the majority holds—then there is no other legally tenable ground that mandates that he pay those costs.

### III.

I end as I began with a reminder of the purpose of appointing a parenting coordinator. According to the Notice to the Bar initiating the Parenting Coordinator Pilot Program:

> The Parenting Coordinator's goal is to aid parties in monitoring the existing parenting plan, reducing misunderstandings, clarifying priorities, exploring possibilities for compromise and developing methods of communication that promote collaboration in parenting. . . . The Parenting Coordinator should provide guidance and direction to the parties with the primary focus on the best interests of the child by reducing conflict and fostering sound decisions that aid positive child development.
>
> [*Notice to the Bar: Parenting Coordinator Pilot Program,* § I., 188 *N.J.L.J.* 169 (Apr. 9, 2007).]

If a parenting coordinator cannot fulfill the role described in the Notice to the Bar, the task is pointless.

I do not doubt that Moses Segal was a most difficult and contentious parent. But it is not likely that a reasonable person would expect that he would have to compensate a parenting coordinator $33,304.57 for responding to grievances, when the person's share of the total parenting coordinator fees amounted to only $12,128.95. Holding Segal accountable under those circumstances contravenes "the interests of justice, morality and common fairness" essential to a proper application of equitable estoppel. *See Gruber v. Mayor of Raritan Twp.,* 39 *N.J.* 1, 13, 186 *A.*2d 489 (1962).

There may be policy benefits in awarding reasonable fees to a parenting coordinator in clearly defined circumstances, but ordering parents to pay exorbitant fees associated with the grievance process will surely dissuade them from exercising their rights to file grievances under the Parenting Coordinator Guidelines.

For these reasons, I respectfully dissent. I concur with the remainder of the majority opinion.

*For affirmance in part/reversal in part*—Chief Justice RABNER and Justices LaVECCHIA, HOENS and PATTERSON, and Judge WEFING (temporarily assigned)—5.

*For dissent in part/concurrence in part*—Justice ALBIN—1.