**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3225-19

IN THE MATTER OF THE
ESTATE OF WICKER W.
DOORNBOSCH, deceased.

_____

Submitted October 12, 2021 – Decided August 19, 2022

Before Judges Accurso, Rose and Enright.

On appeal from the Superior Court of New Jersey, Chancery Division, Bergen County, Docket No. P-000076-18.

Isador Farash, appellant pro se.

Walsh & Walsh, LLC, attorneys for respondent Randal W. Habeeb (John K. Walsh, Jr., of counsel and on the brief).

PER CURIAM

This appeal arises out of probate litigation over the estate of Wicker W. Doornbosch, who died in April 2016. The details of the dispute are unimportant because the parties settled it in open court before Judge Jerejian on May 10, 2019, after the case had been pending for nearly two years.

Counsel for appellant Isidor Farash put the terms on the record, explaining Farash was to receive a lump sum payment of $90,000 from a percentage of two IRAs and a trust, with the balance to come from the estate, and a piece of artwork. Farash swore under oath he understood and agreed he was entering into a binding settlement, and that by accepting it he would have no further interest in the estate, not be entitled to an accounting, have no right to challenge commissions, have no right to seek legal fees from the estate, and that there would be income tax consequences in connection with his receipt of a percentage of the IRAs.

Farash's counsel was the lawyer who insisted on a written agreement and mutual releases when the settlement was placed on the record. Counsel for the administrator, Randal W. Habeeb, did not object, so long as the agreement did not vary from the terms agreed to on the record. In response to a specific question from his counsel, Farash agreed the parties would exchange mutual releases.

In the months that followed the settlement agreement, Farash refused to execute releases, and the estate refused to pay over the settlement funds without them. Farash also objected to a term of the written agreement making him responsible for all interest and penalties resulting from the IRA

A-3225-19

withdrawals and thus refused to sign the forms to execute the withdrawals or the settlement agreement. Judge Jerejian denied Farash's motion to enforce the settlement agreement pursuant to Rule 1:10-3 without prejudice, finding it premature as Farash had not contacted the financial institution to have his share of the IRAs paid out to him and thus had no idea as to whether there would be any interest and penalties. The judge further ordered that once Farash received the IRA funds, the administrator should calculate the balance due and send a check in that sum to Farash's counsel to be held in escrow pending Farash's execution of the releases. Farash's counsel drafted the order the judge signed on October 16, 2019, which was silent as to his application for fees.

Several months later, the administrator moved to enforce the settlement and for attorneys' fees, claiming Farash refused to execute the releases. Farash opposed the motion and cross-moved for fees. By that time Farash's counsel, his third, had withdrawn, leaving him to argue the motions in his own behalf. After hearing argument, Judge Jerejian explained to Farash his opposition to the motion consisted of "rehashing basically an undue influence will contest" that was not before the court because Farash waived those claims when he entered into the settlement agreement on the record in May 2019. Farash then

expressed a willingness on the record "to sign the releases and everyone goes home and this is over if that's going to finalize it and I get my artwork forthwith."

Farash signed the release in court and Judge Jerejian, although acknowledging the administrator's fee request, determined to deny fees "in the spirit of ending this once and for all." The judge entered an order the same day, March 6, 2020, enforcing the settlement, noting "interested persons and parties have compl[ied] with its terms," and denied the administrator's request for fees.

Farash purports to appeal both orders, arguing the trial judge abused his discretion in failing to remove Habeeb as executor and in denying Farash's request for fees and costs for the administrator's violation of the settlement agreement. He also claims the judge violated his due process rights by "failing to protect the assets of the estate, and by failing to render a distribution to which [Farash] was entitled." We reject his arguments.

The probate judge's decision as to whether to award attorneys' fees is a matter committed to his sound discretion, In re Will of Landsman, 319 N.J. Super. 252, 271-72 (App. Div. 1999), which "will be disturbed only on the rarest of occasions, and then only because of a clear abuse of discretion,"

4

Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 444 (2001). This is not one of those rare occasions.

Judge Jerejian denied Farash's motion to enforce the settlement agreement while Farash refused to execute the IRA forms, the settlement agreement and the mutual releases, finding his motion both speculative and premature. There was thus no basis for an award of fees to Farash on a Rule 1:10-3 motion he lost. See Pressler & Verniero, Current N.J. Court Rules, cmt. 4.4.5 on R. 1:10-3 (2022) ("Attorney's fees are awardable under this rule only to a party who has obtained relief."); Jersey City Redev. Agency v. Clean-O-Mat Corp., 289 N.J. Super. 381, 405 (App. Div. 1996). By the time the administrator moved to enforce the agreement, Farash's counsel had withdrawn. As he was without counsel on the motion, he incurred no counsel fees. Farash is not entitled to attorneys' fees for representing himself on the motion. See Segal v. Lynch, 211 N.J. 230, 260-64 (2012).

As for Farash's complaints about the probate judge's failure to remove the administrator and protect the assets of the estate and failing to render a distribution to which Farash believed himself entitled, those issues are not properly before us. As Judge Jerejian explained to Farash on the administrator's motion to enforce the settlement agreement, Farash's settlement

of the probate litigation precludes his relitigation of claims that either were raised or could have been raised in that proceeding. See Kelleher v. Lozzi, 7 N.J. 17, 26 (1951) (noting dismissal of a suit based on a compromise settlement and adjustment of the matter in dispute between the parties "is a dismissal on the merits and would be a bar to further litigation on the same subject between the parties"); Bartholdi v. Dumbeky, 37 N.J. Super. 418, 422-23 (App. Div. 1955) (holding appellant could not disavow settlement agreements he made in the trial court that were both binding on him and "dispositive of the issues argued before the trial court as well as those here sought to be raised on appeal").

We deem Farash's remaining arguments, to the extent we have not addressed them, without sufficient merit to warrant discussion in a written opinion. See R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3225-19